**ASSOCIATION OF INDUSTRIAL SCIENTISTS, Appellant,**

v.

**SHELL DEVELOPMENT COMPANY, a division of Shell Oil Company, a corporation, Appellee.**

No. 19425.

United States Court of Appeals
Ninth Circuit.

June 29, 1965.

Ernest H. Norback, Adrian G. Schoorl, Norback & Law, San Mateo, Cal., for appellant.

William W. Schwarzer, McCutchen, Doyle, Brown, Trautman & Enersen, San Francisco, Cal., J. Carter Perkins, B. G. Warren, Los Angeles, Cal., for appellee.

Before HAMLEY and KOELSCH, Circuit Judges, and MADDEN, Judge of the Court of Claims.

KOELSCH, Circuit Judge.

The Association of Industrial Scientists commenced this suit to compel Shell Development Company, a division of Shell Oil Company, to submit to arbitration a labor dispute pursuant to the collective bargaining agreement between the parties.[1] The dispute arose when Shell decided to close its Fuels and Lubricants Department at Emeryville, California and transfer ten of the research scientists employed there to other laboratories in Illinois. Shell advised them that a refusal to go would result in their discharge. All ten are members of the Association which is their collective bargaining representative.

The District Court, concluding (1) from an "examination of the agreement in its entirety" that the dispute was not one within the arbitration provision of the agreement and (2) that, in any event, the grievance procedure provided by the agreement could be invoked only by the individual employees and was not available to the Association, granted Shell's motion for summary judgment. This appeal followed.

"The duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty." John Wiley & Sons v. Livingston, 376 U.S. 543, 547, 84 S.Ct. 909, 913, 11 L.Ed.2d 898 (1964). It is true that the bargaining agreement before the court made no mention of geographical transfers (or for that matter the nature or type of any particular complaint) as a subject for discussion and arbitration. But that silence clearly did not justify the entry of summary judgment. Manifestly, the parties entered into the agreement to forestall industrial strife by providing a method to preclude by peaceful means disruptive labor disputes; in the agreement they expressly declared that "[t]here shall be no cessation of work due to strikes or lockouts during the period of this Agreement"; and to that end they not only agreed that employees could present for discussion complaints "on any subject" but they also provided grievance procedures with arbitration proceedings as the final stage.

The District Court thus should have viewed the agreement as "more than a contract" [United Steelworkers of America v. Warrior & Gulf Co., 363 U.S. 574, 578, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)], and proceeded on the assumption that it reflected a bi-partite effort to erect "a system of industrial self-government," [Id., at 580, 80 S.Ct. at 1352] with the arbitration machinery "at the very heart." Id. at 581, 80 S.Ct. at 1351. In determining the scope of the agreement, the court should have commenced with the premise that "[a]part from matters that the parties specifically exclude, all of the questions on which the parties disagree[d] must therefore come within the scope of the grievance and arbitration provisions of the collective agreement." Id. But this was not the court's approach. The "findings of fact" which the court made, preliminary to entry of summary judgment, show that the court held the view that such agreements must be narrowly construed. This was incorrect.[2] "An order to ar-

---

1. Jurisdiction of the action was conferred upon the District Court by Sec. 301 of the Labor Management Relations Act (61 Stat. 136, 156, 29 U.S.C. § 185).

2. "When, however, an absolute no-strike clause is included in the agreement, then in a very real sense everything that management does is subject to the agreement, for either management is prohibited or limited in the action it takes, or if

bitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." United Steelworkers v. Warrior & Gulf Co., supra, 363 U.S. at 582, 583, 80 S.Ct. at 1353. And no fact or combination of facts appearing in the materials submitted to the court on the motion was sufficient to settle the issue.[3]

The second ground of decision was one not available to the district court, and accordingly does not afford valid support for the entry of the judgment against the Association.

The parties' agreement provided two other procedures to be respectively exhausted before resort could be made to arbitration. "Step 1," required the employee to "verbally" present his complaint to his immediate supervisor. If the

matter still remained unsettled "Step 2" provided for a meeting between Shell's manager and the Association's adjustment committee. The meeting would be held upon the Association's written request, signed by the employee, and setting out a full statement of his complaint. If this meeting failed to satisfactorily settle the complaint, then the Association was entitled to demand arbitration as provided by "Step 3."

The District Court reasoned that the Association, as the employees' collective bargaining representative, had no standing to initiate the adjustment proceedings because "the adjustment procedure set forth in Article IV (of the bargaining agreement) is not susceptible of an interpretation that would cover the complaint presented by the petitioners where the employees to which it relates have not become parties to the complaint by signing the written statement thereof." [4]

---

not, it is protected from interference by strikes." United Steelworkers v. Warrior & Gulf Co., supra, 363 U.S. at 583, 80 S.Ct. at 1353.

3. In resolving the issue of arbitrability, a court is, of course, not free to disregard direct proof in favor of presumption. Where the issue is one of intent, the bargaining history may be relevant and of considerable assistance. Communication Workers of America v. Pac. N. W. Bell Tel. Co., 337 F.2d 455 (9th Cir. 1964).

Here, however, the only showing submitted on Shell's motion appeared in a stipulation, and reads: "On September 29, 1961, in the course of negotiations between petitioner (i. e., the Association) and respondent concerning the modification of the collective bargaining agreement then in effect, petitioner proposed the following addition:

'Refusal to accept a transfer from Emeryville to another Shell installation shall not of itself be sufficient cause for dismissal'."

We are at a loss to understand what relevancy this fact would have, for the negotiations referred to were conducted in 1961 and apparently related to a contract other than the one involved in this case which was executed under date of 1963. However, in any event, this fragmentary fact is highly equivocal, especially since the stipulation further recites that "On Nov. 10, 1961 petitioner withdrew the proposal. Petitioner and

respondent are unable to stipulate as to the circumstances of the withdrawal."

Because of our disposition of this appeal, we deem it advisable to point out the admonition of the Supreme Court that in agreements not expressly excluding particular grievances and containing "quite broad" arbitration clauses, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail * * *." We likewise call attention to the Court's cautionary direction that "[s]ince any attempt by a court to infer such a purpose necessarily comprehends the merits, the court should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator." United Steelworkers v. Warrior & Gulf Co., supra, 363 U.S. at 585, 80 S.Ct. at 1354.

4. Among the materials before the District Court on the motion was a letter from the Association to Shell requesting a meeting pursuant to Step II of the agreement. In the letter, the Association set forth the complaint stating that the complaint was that "of the Association in its own behalf as the collective bargaining agent and on behalf of the ten individual employees" named therein.

But in making this determination, the District Court usurped a function which the Supreme Court in John Wiley & Sons v. Livingston, supra, 376 U.S. 543, 84 S.Ct. 909 (1964) has squarely held is to be exercised exclusively by the arbitrator.

▪ Wiley tells us that procedural questions are for the arbitrator without regard to factual variations from case to case.[5] First, because as the Supreme Court said, ordinarily a court cannot avoid involvement with the merits of a dispute were it to resolve the issue of procedural arbitrability. John Wiley & Sons v. Livingston, supra, 376 U.S. at 557, 84 S.Ct. 909. (True, the Court went on to acknowledge that this would not always be a consideration and, it might be added, the case before us might well, as a matter of speculation, be among those "rare" cases). And second and separately because, as the Court rationalized, "procedural disagreements" [should be viewed] "not as separate disputes but as aspects of the dispute which called the grievance procedures into play." Id. at 559, 84 S.Ct. at 919. For to leave the determination of procedural arbitrability to a court "would produce the delay attendant upon judicial proceedings preliminary to arbitration," [Id. at 558, 84 S.Ct. at 919] and would "entail the fractionating of disputes about subjects which the parties do wish to have submitted" contrary to "the usual purposes of an arbitration clause and * * the policy behind federal labor law" favoring speedy settlement of industrial disputes. [Id. at 559, 84 S.Ct. at 919].

▪ We think the question, whether a given grievance may be processed by a duly constituted bargaining agent of an employee or by the individual employee, can only be characterized as a procedural matter. Compliance with the grievance procedures bears not at all upon the question of whether the grievance is of a substantive nature embraced by the agreement to arbitrate. Moreover, the proper scope of the agent's authority and the nature of his role in matters concerning labor disputes would appear to be a question peculiarly within the province of the arbitrator possessing, as he does, "knowledge of the common law of the shop" and the ability to "bring to bear considerations which are not expressed in the contract as criteria for judgment." United Steelworkers v. Warrior & Gulf Co., supra, 363 U.S. at 582, 80 S.Ct. at 1352. Indeed, "[T]he considerations which help him fashion judgments may * * * be foreign to the competence of courts." Id. at 581, 80 S.Ct. at 1352.

▪ We add that we are at one with the District Court's apparent objective of keeping the determination of arbitrability brief and to the point. That course most comports with the policy favoring speedy settlement of industrial disputes. But to rule a controversy not arbitrable on scant evidence falling short of a clear demonstration of that fact would set at naught the equally important policy enunciated in the Steelworkers trilogy [6] to arbitrate all disputes not clearly outside the arbitration clause. The District Court must accommodate these conflicting considerations.

The judgment is vacated and the matter is remanded to the District Court for further proceedings consistent with this opinion.

---

5. We quote from Wiley:
   "Once it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." 376 U.S. at 557, 84 S.Ct. at 918.

6. United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., supra, 363 U.S. 574, 80 S. Ct. 1347, 4 L.Ed.2d 1409; United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).