**OWENS–ILLINOIS, INC., Plaintiff,**

v.

**DISTRICT 65, RETAIL, WHOLESALE AND DEPARTMENT STORE UN-ION, AFL–CIO, Defendant.**

**No. 66 Civ. 2213.**

United States District Court
S. D. New York.

June 5, 1967.

McGoldrick, Dannett, Horowitz & Golub, New York City, Fuller, Seney, Henry & Hodge, Toledo, Ohio, for plaintiff; Emanuel Dannett, New York City, Richard S. Baker, Toledo, Ohio, Jacob Silver-

man, New York City, Fred E. Fuller, Toledo, Ohio, of counsel.

Eugene G. Eisner, New York City, for defendant.

OPINION

McLEAN, District Judge.

This is an action under Section 301 of the Labor Management Relations Act (29 U.S.C. § 185) by an employer against a union for a declaratory judgment and an injunction restraining defendant from proceeding to arbitrate against plaintiff under a collective bargaining agreement between defendant and Atlantic Container Corporation (Atlantic). Both sides move for summary judgment. There is no dispute as to any material fact. The facts are set forth in detail in the affidavits. They may be briefly summarized as follows.

In 1964 Atlantic was engaged in manufacturing corrugated boxes in a leased plant in Moonachie, New Jersey. It had a collective bargaining agreement with defendant. No copy of this agreement has been furnished to the court, but it is said, without contradiction, to have been substantially similar to a collective bargaining agreement, a copy of which has been supplied, between defendant and an employers' association of which Atlantic had formerly been a member and which it rejoined during the term of the agreement. The agreement expired by its terms on August 31, 1964, but was extended by written agreement between the association and the union to August 31, 1965, and by subsequent oral agreement to September 30, 1965.

A separate memorandum signed by the association and the union contained a provision reading as follows:

"Should an Employer covered by the agreement between the Metropolitan Container Council and District 65 assign, sell or otherwise dispose of its business in whole or in part, then in such event, such vendees, assignees or successors shall be bound by the terms of the agreement between the Metropolitan Container Council and its pres-

ent members or any future members and District 65 and in addition, the aforesaid Employer shall deliver to the Union an assumption agreement executed by such vendee, assignee, or successor which shall be delivered prior to the consumation [sic] of such sale, assignment or other transference."

This provision was intentionally omitted from the collective bargaining agreement in order to conceal its existence from any prospective purchaser of an employer's business. The union's affidavit states:

"The reason why said clause was omitted from the printed agreement (Exhibit A attached to plaintiff's complaint), arises from the fact that the negotiating team on behalf of the *Association* specifically requested that said clause be omitted from the printed document! They felt it might be difficult for any member of the Association to consummate a sale of its business, in whole or in part, if the prospective purchaser were aware of the existence of said clause."

On May 14, 1965 Atlantic filed a petition under Chapter XI of the Bankruptcy Act in the United States District Court for the District of New Jersey. The court appointed a receiver. In July 1965 the receiver discontinued manufacturing operations. All production employees were discharged.

On August 9, 1965, plaintiff entered into an agreement with Atlantic and its receiver pursuant to which plaintiff purchased all the machinery and equipment in the plant and all inventories of raw material and work in process. Atlantic also assigned to plaintiff its lease on the building. Plaintiff subsequently, by agreement with the landlord, cancelled this lease and entered into a new one. The agreement between plaintiff and Atlantic was approved by the referee in bankruptcy. By order dated September 20, 1965, the referee confirmed a Plan of Arrangement for Atlantic. The order provided that the sale of the assets of Atlantic to plaintiff "shall be free and clear of any and all rights, claims, liens,

encumbrances and/or security interests of whatsoever kind or nature," except as set forth in the agreement of sale. There was no reference in the agreement of sale to Atlantic's collective bargaining agreement with defendant. Plaintiff did not know of the existence of the secret memorandum between the association and the union.

Plaintiff began to operate the Moonachie plant on January 17, 1966, after it had made various alterations to it and had installed certain additional machinery. It manufactures corrugated boxes there. It began operations with thirty-three production employees. The number of such employees has gradually increased to 110. Only seven of these production employees formerly worked for Atlantic.

Plaintiff has another plant in Newark, New Jersey, in which it manufactures corrugated boxes. Plaintiff has a collective bargaining agreement with another union, Local 300 of the International Brotherhood of Pulp, Sulphite and Paper Mill Workers, covering the employees at that plant. On January 17, 1966 Local 300 demanded that it be recognized as the bargaining agent of the employees at the Moonachie plant, a majority of whom were members of Local 300. Plaintiff accepted this demand and entered into an agreement with Local 300 extending its collective bargaining agreement to cover the Moonachie employees.

The operations of the two plants are fully integrated. Thirty-one of the original thirty-three production employees at Moonachie were transferred there from Newark. Supervisors and some clerical employees were also transferred.

Plaintiff hired two of the former executives of Atlantic, the Feldmans, as "consultants" for a period of three years. The papers do not make clear what they consult about. Plaintiff says that they have not procured any customers for plaintiff. According to plaintiff, none of the plaintiff's customers supplied from the Moonachie plant "was obtained from any customer list furnished to us by Atlantic."

Article XXV of the collective bargaining agreement between defendant and the association is entitled "Grievances." It provides that:

"Any and all grievances, complaints, controversies and disputes arising between an Employer and the Union concerning the interpretation, operation, application or performance of the terms of this agreement, or any complaint, controversy, dispute or grievance involving a claimed breach of any of the terms of this agreement, shall be adjusted as follows:    *    *    *."

The article goes on to provide that such controversies shall first be discussed by the parties and if no adjustment is reached, shall then be submitted for decision to the "Board of Review" whose decision shall be final, but if the "Board of Review does not make its decision within one week after submission to it," the controversy "May be submitted to arbitration by either the Council or Union in accordance with the rules of the American Arbitration Association    *    *    *."

There is nothing to indicate that the present controversy has ever been submitted to any Board of Review. On June 15, 1966 an attorney for the union wrote a letter to the American Arbitration Association reading as follows:

"District 65, RWDSU, AFL-CIO hereby requests that your Association initiate arbitration proceedings against the above-named Employers inasmuch as they have failed to abide by the contractual provisions of the collective bargaining agreement between District 65 and Metropolitan Container Council, Inc.

"The remedy sought by the Union is: 'continuation of all rights under the collective bargaining agreement and any and all damages suffered by reason of any breach thereof.' "

These motions present two legal questions for decision by the court: (1) is plaintiff bound by the arbitration clause in the collective bargaining agreement between defendant union and Atlantic? (2) does the fact that plaintiff has a collective bargaining agreement with another union, Local 300, covering the employees at the Moonachie plant, make the enforcement of the arbitration clause in the Atlantic agreement as against plaintiff impracticable and inequitable?

As to the first question, the basic case is of course John Wiley & Sons Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). That decision held that a corporation formed by a merger of two corporations is bound by the arbitration clause in a collective bargaining agreement previously made by one of the constituent corporations. That holding is not decisive here, for this is not a merger case.

The *Wiley* principle has been extended to cover a case in which the new employer acquired the former employer's business by purchase rather than by merger. Wackenhut Corporation v. International Union, etc., 332 F.2d 954 (9th Cir. 1964); United Steelworkers of America v. Reliance Universal, Inc., 335 F.2d 891 (3rd Cir. 1964).

These decisions were cited with approval by the Court of Appeals for the Second Circuit in McGuire v. Humble Oil & Refining Company, 355 F.2d 352 (2d Cir. 1966), cert. denied, 384 U.S. 988, 86 S. Ct. 1889, 16 L.Ed.2d 1004 (1966). The court, however, did not decide this question in that case.

In *Wackenhut* the purchaser acquired substantially all the assets of the seller and assumed substantially all the seller's liabilities, although it did not expressly assume the seller's labor agreement. "All or most" of the seller's sixty-five employees went to work for the purchaser. They continued to wear the same uniforms bearing the insignia of the seller. They continued to perform the same duties. Several executives of the seller obtained comparable positions with the purchaser.

In *United Steelworkers* the seller was required by a Federal Trade Commission order to divest itself of its plant, machinery, contract rights and goodwill. The buyer purchased all this property as

a going concern. It continued to operate without substantial change, at the same location, with the same equipment and with substantially all the same operating, supervisory, and managerial employees.

The difference between the situation in *Wackenhut* and *United Steel Workers* and that in the present case is manifest. To reach the same result here would require a still further extension of the *Wiley* principle. In my opinion no such extension is warranted. There is no such "substantial continuity of identity in the business enterprise" in this case as there was in the cases cited above, and as the *Wiley* rule requires.

Nor is any such extension required by the very recent decision of the Second Circuit in The Monroe Sander Corporation v. Livingston, 377 F.2d 6 (2d Cir. 1967). That involved a still different situation, i. e., a case in which a parent company acquired a new subsidiary and transferred to it the business operations of another subsidiary, which had a collective bargaining contract.

■ The union relies here upon the clause previously quoted in the confidential memorandum, i. e., the clause which purported to make the collective bargaining agreement of a member of the association binding upon a purchaser of his business. Clearly this clause is not binding upon plaintiff under any normal principles of contract law. Plaintiff never agreed to it, never knew of it, and in fact the union and Atlantic intentionally concealed it from plaintiff. In any event, the *Wiley* doctrine does not depend upon regular principles of contract law. It imposes liability, in a proper case, regardless of contract principles. This clause, therefore, is immaterial. The question is whether, apart from that clause, this is a proper case to apply the *Wiley* doctrine. I hold that it is not. Plaintiff is not bound by the arbitration clause in Atlantic's labor agreement.

A clear answer to the second question is provided by McGuire v. Humble Oil & Refining Company, *supra*. That was an action by a union to compel the purchaser of assets of a corporation with which the union had had a collective bargaining agreement to arbitrate under that agreement. The defendant purchaser had a collective bargaining agreement with another union which had been found by the National Labor Relations Board to be the exclusive bargaining representative of defendant's employees, including those who were formerly employed by the seller. The court held that "to direct arbitration here would disturb the harmony of the existing body of federal labor law and tend to foster rather than prevent industrial strife and unrest." (355 F.2d at 357). The order of the district court requiring defendant to proceed to arbitration was reversed.

■ This decision is conclusive here. It makes no difference that in the present case the NLRB has not acted. It is undisputed that a majority of plaintiff's employees are members of Local 300. Defendant is a "minority union." There is as much likelihood here as there was in *McGuire* that to compel plaintiff to arbitrate with defendant would compel it to commit an unfair labor practice. In *McGuire* the court pointed out that arbitration is part of the collective bargaining process, that it is the duty of an employer to bargain with the representative of a majority of its employees, and that "this duty to bargain applies whether the collective-bargaining representative is certified or not." (355 F.2d at 358).

Therefore, on both grounds, plaintiff's motion for summary judgment must be granted and defendant's motion for summary judgment denied.

So ordered.