**INTERNATIONAL ASSOCIATION OF MACHINISTS, etc., Petitioner-Appellee,**

**v.**

**HOWMET CORPORATION et al., Respondents,**

**Menasco Manufacturing Company, Respondent-Appellant.**

**No. 71–1132.**

United States Court of Appeals, Ninth Circuit.

Sept. 11, 1972.

Jerome C. Byrne (argued), Williad Z. Carr, Jr., Kenneth E. Ristau, Jr., Kenneth W. Anderson, of Gibson, Dunn & Crutcher, Los Angeles, Cal., for respondent-appellant.

Herbert M. Ansell (argued), of Ansell & Ansell, Los Angeles, Cal., for petitioner-appellee.

Before CHAMBERS and DUNIWAY, Circuit Judges, and ANDERSON,* District Judge.

* Honorable J. Blaine Anderson, United States District Judge, District of Idaho, sitting by designation.

**DUNIWAY, Circuit Judge:**

The International Association of Machinists, District Lodge 94, and its affiliated Local Lodge 1571 (the Union) filed this action under 29 U.S.C. § 185 to compel arbitration of several grievances against Howmet Corporation and Menasco Manufacturing Co. Summary judgment was entered by the district court in favor of the Union against Menasco, but against the Union with respect to Howmet. Menasco appeals. We remand to the district court for modification of the order.

## I. FACTS.

Until 1970, Menasco and Howmet both manufactured aircraft landing gear. In 1970 Menasco, a corporation with manufacturing plants in Burbank, California, and Fort Worth, Texas, purchased two California plants from Howmet, in Montebello and Pomona, and took over Howmet's contracts and manufacturing operations for the production of aircraft landing gear. The Union represented the production and maintenance employees at the Montebello plant and was party to a collective bargaining agreement (the Agreement) with Howmet covering those employees at the time of the Menasco takeover. In the purchase contract, Menasco succeeded to the Agreement with the Union as soon as it began operating the Montebello plant.

Because the Montebello plant was operating at a substantial loss, Menasco decided to close the plant, and it so informed the Union. Negotiations followed concerning the details of the closure operation and its effect on the employees. After five meetings over a period of four months failed to result in agreement on the issues of severance and vacation pay, job transfer and preferential hiring of the Montebello employees at other Menasco plants, and payments to the Union pension plan, the Union demanded arbitration under the terms of the Agreement. Menasco refused to arbitrate, and this action followed.

## II. SCOPE OF COMPANY'S OBLIGATION TO ARBITRATE

■ The Supreme Court has established a strong presumption in favor of arbitration as the preferred method of settlement of industrial disputes. When the standard form of arbitration clause is used in a collective bargaining agreement, as it was here,[1] "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." United Steelworkers of America v. Warrior & Gulf Co., 1960, 363 U.S. 574, 582–583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409. See also United Steelworkers of America v. American Manufacturing Co., 1960, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403, and United Steelworkers of America v. Enterprise Wheel & Car Co., 1960, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (hereinafter referred to as the *Steelworkers Trilogy*).

■■ Although arbitration is a matter of mutual agreement between the

---

1. The so-called standard arbitration clause submits to arbitration all disputes between the parties "as to the meaning, interpretation and application of the provisions of this agreement." United Steelworkers of America v. American Mfg. Co., 1960, 363 U.S. 564, 565, 80 S.Ct. 1343, 1345, 4 L.Ed.2d 1403. The arbitration clause involved here refers to arbitration any unsettled grievance "which involves the interpretation or application of this Agreement."

Menasco claims this case is not comparable to the *Trilogy* because the arbitration clause here is not as broad as the one in *Warrior & Gulf*. It is true that the clause in *Warrior & Gulf* contained a phrase submitting to the arbitration process "local trouble of any kind." However, the Court made it quite clear that it was not relying on that part of the clause to justify its finding of arbitrability. 363 U.S. at 585, 80 S.Ct. 1343. Also, no court which has subsequently applied the *Trilogy* has given any significance to the fact that that extra, all-encompassing phrase was present in the *Warrior & Gulf* arbitration clause.

parties,[2] and they may choose to exclude certain areas of contention from the arbitration process, the standard set by the Court for finding a dispute nonarbitrable is a strict one: There must be either an "express provision excluding a particular grievance from arbitration" or "the most forceful evidence of a purpose to exclude the claim from arbitration." *Id.* at 585, 80 S.Ct. at 1354. Here, there is no such "express provision." Whether or not a particular dispute is *prima facie* covered by the agreement's arbitration procedure is a question for the court to decide, *see* John Wiley & Sons v. Livingstone, 1964, 376 U.S. 543, 546–547, 84 S.Ct. 909, 11 L.Ed.2d 898, and Local Freight Drivers Local 208 v. Braswell Motor Freight Lines, Inc., 9 Cir., 1970, 422 F.2d 109, 112. The issue is therefore a simple one: is there forceful evidence of a purpose to exclude these grievances from arbitration so that the heavy presumption in favor of arbitration is overcome? We hold that there is not.

The "evidence" urged by Menasco as indicating that the claims involved were not to be subject to arbitration procedure is threefold: (1) the absence of a clause or reference in the Agreement dealing specifically with those issues; (2) the Union's attempt to negotiate with Menasco concerning the issues connected with the plant closure; and (3) the assertion that the arbitration clause involved here is more restrictive than the standard one because it specifically provided that the arbitrator "shall not have the power to add to, subtract from, or change any of the terms of this Agreement."

■ However, explicit language in collective bargaining agreements covering each specific claim alleged to be arbitrable is not required. We have held that the complete silence of an agreement on the issues sought to be arbitrated is not sufficient evidence to meet the rigorous standard set by the *Steelworkers Trilogy* for a finding of nonarbitrability. Association of Industrial Scientists v. Shell Development Co., 9 Cir., 1965, 348 F.2d 385, 387. See also Procter & Gamble Independent Union of Port Ivory, N. Y. v. Procter & Gamble Mfg. Co., 2 Cir., 1962, 298 F.2d 644, 645. Like the Supreme Court in *John Wiley & Sons v. Livingstone, supra,* we are faced here with a situation created by an action (a merger in *Wiley,* a plant closure here) which was not, in all probability, expressly contemplated by the Union and Howmet when the Agreement was entered into. "Fairly taken, however, the Union's demands collectively raise the question which underlies the whole litigation: What is the effect of the merger [plant closure] on the rights of the covered employees?" 376 U.S. at 554, 84 S.Ct. at 917. That question can be best answered by reference to and interpretation of the terms of the Agreement itself, a function of the arbitrator.

■■ The second piece of "evidence" is likewise insufficient. It is true that the Union did not demand arbitration immediately upon learning of Menasco's refusal to accede to its claims, but evidenced a willingness to negotiate and compromise. Such behavior does not conclusively demonstrate that the claims were not covered by the Agreement. As we said in the *Shell Development* case, *supra,* ". . . to rule a controversy nonarbitrable on scant evidence falling short of a clear demonstration of that fact would set at naught the . . . important policy enunciated in the Steelworkers trilogy to arbitrate all disputes not clearly outside the arbitration clause." 348 F.2d at 389. Likewise, Menasco's third argument is without merit. We agree with the Fourth Circuit that a clause limiting the power of the

---

2. Menasco does not urge that it is not bound by the collective bargaining agreement between Howmet and the Union. Under prior decisions such an argument is unavailable. John Wiley & Sons v. Livingstone, 1964, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898; Wackenhut Corp. v. International Union, United Plant Guard Workers of America, 9 Cir., 1964, 332 F.2d 954, 958.

arbitrator to add to, subtract from, or alter the provisions of the agreement does not affect the jurisdiction of the arbitrator, but merely limits his power to fashion an award. Tobacco Workers International Union, Local 317 v. Lorillard Corp., 4 Cir., 1971, 448 F.2d 949, 955.

■ We have rejected employers' contentions of nonarbitrability in situations where the evidence of a purpose to exclude the claims from the arbitration procedure was more forceful and substantial than that present in this case.[3] See, e. g., Desert Coca Cola Bottling Co. v. General Sales Drivers, etc., 9 Cir., 1964, 335 F.2d 198. In such cases, as in this one, the public policy favoring the resolution of industrial disputes in a nonjudicial forum, with its attendant advantages of economy, efficiency and expertise, requires that we broadly construe arbitration clauses and uphold the arbitrability of issues which are even arguably covered by the collective bargaining agreement. From that perspective, we must affirm the district court's finding that the issues in question are arbitrable.

## III. OTHER POINTS RAISED BY MENASCO

A. *Inequity of compelling arbitration.*

Menasco argues that arbitration should not be compelled because any award made by the arbitrator concerning some of the alleged grievances—job transfer and preferential hiring at other Menasco plants, as well as application of the Howmet Agreement to those Montebello employees who may be hired by Menasco at its other plants—would require conduct by Menasco which would be illegal as an unfair labor practice or would contravene Menasco's collective bargaining agreements with other unions at its other plants. The employees

at Menasco's Burbank and Pomona plants are represented by other unions, and the Company argues that arbitration of the questions of job transfers and preferential hiring of Montebello employees and application of the Howmet Agreement to those hired at the plants involve matters which are within the exclusive purview of the unions representing Menasco employees at the other plants. Any effort on Menasco's part to comply with an arbitration award covering those matters would result in violation of its collective bargaining agreements with those other unions and the commission of unfair labor practices; and even the mere fact of arbitrating with one union issues which are committed to the exclusive bargaining purview of another union would create the very kind of industrial strife and unrest which it is the objective of national labor policy to avoid.

■ We think that Menasco's position has merit. The Supreme Court held in the *Steelworkers Trilogy* that the underlying objective of the policy favoring the resolution of disputes by arbitration is that of avoiding industrial strife and promoting industrial harmony through a fair, fast, and flexible system utilizing neutral but knowledgeable "peace-makers." That objective is served by a strong judicial policy, initiated by the *Trilogy,* of broadly construing the arbitration clauses of collective bargaining agreements and requiring the disputing parties to arbitrate whenever their agreement is possibly susceptible of an interpretation permitting such action. However, when situations arise, as here, in which the objective of avoiding industrial strife and disharmony would not be served by compelling arbitration, a court has the obligation to examine the potential consequences of compelling arbitration and to tailor its order accordingly.

3. In one case the evidence was sufficient to justify the district court's finding of nonarbitrability. Communications Workers of America v. Pacific Northwest Bell Telephone Co., 9 Cir., 1964, 337 F.2d

455. Nothing in the instant case, however, even approaches the persuasive showing of an intent to exclude the issues in question from arbitration made in that case.

We are faced with circumstances similar in many respects to that dealt with by the Second Circuit in McGuire v. Humble Oil & Refining Co., 2 Cir., 1966, 355 F.2d 352. There, the Company had purchased a business and hired a few of the seller's former employees to continue working in the business. The seller and the buyer each had a collective bargaining agreement with a different union. Those new employees of the buyer who had formerly worked for the seller filed grievances with their new employer and demanded arbitration under their collective bargaining agreement with the seller. Meanwhile, the buyer obtained from the National Labor Relations Board a decision clarifying the bargaining unit: the union which had represented the buyer's employees was declared the sole bargaining agent for all current employees including those formerly working for the seller. Under those circumstances, the Second Circuit refused to compel arbitration with the seller's union, fearing that arbitration which might result in the seller's union continuing to represent former employees of the seller could lead to unrest and dissatisfaction among the majority of buyer's employees. Such arbitration would not serve the objective of avoiding industrial strife, but rather might foster it. The court also expressed concern that compelling the buyer to arbitrate with a union other than the one determined by the National Labor Relations Board to be the legitimate bargaining agent for all company employees might force the buyer to commit an unfair labor practice by "bargaining" with a minority union when a majority one was in existence. In a later case, the Second Circuit held that the absence of a specific National Labor Relations Board clarification order finding the buyer's union the official sole bargaining agent did not alter this result. Owens-Illinois, Inc. v. District 65, Retail, Wholesale and Department Store Union, 2 Cir., 1967, 393 F.2d 932, aff'g S.D.N.Y., 1967, 276 F.Supp. 740.

Here, the buyer (Menasco) and the seller (Howmet) had collective bargaining agreements with different unions. Menasco is bound by Howmet's collective bargaining agreement with the Union at the Montebello plant. The Union, representing the employees at that plant, now seeks a judicial order compelling Menasco to arbitrate issues which directly involve Menasco's obligations under its collective bargaining agreements with other unions at its other plants: job transfers and preferential hiring of Montebello employees at Menasco's plants in Burbank and Pomona and continued application of the Montebello Agreement to former Montebello plant employees so hired. An award issued by the arbitrator which gave the Union any relief on these issues would, we believe, foster rather than alleviate industrial disharmony by forcing the employer to arbitrate with one union issues which touch the very heart of the employer's collective bargaining agreement with another union. We concur in remarks of the Fifth Circuit concerning an analogous situation:

"Although we are mindful of the Supreme Court's belief in the flexibility of arbitration and actually share such a belief, we also share the apprehension felt by the Court in *McGuire*. . . . [T]he resolution of one employee grievance under one of the contracts might be the basis for another grievance under the other contract which would in turn produce a series of complaints. . . . Therefore, allowing the grievance machinery to remain in force would more likely produce industrial strife rather than prevent it.

"We take cognizance of the fact that every grievance always gives rise to unrest in industrial relations and such grievances should be settled quickly and fairly in order to prevent the strife that usually accompanies them. But the resolution of such grievances should never give birth to additional unrest and dissatisfaction."

Southern Conference of Teamsters v. Red Ball Motor Freight, 5 Cir., 1967, 374 F.2d 932, 941.

It may well be true, as the Union urges, that Menasco will never be forced to comply with an arbitration award giving relief on issues covered by its collective bargaining agreements with other unions, because the remedy of an action to vacate or modify the award is always available. However, we do not consider that remedy adequate in the circumstances of this case. It is the arbitration itself—the fact of Menasco's dealing with one union on issues committed to the exclusive bargaining jurisdiction of another union—which gives rise to the unrest and dissatisfaction which national labor policy seeks to prevent. The realistic choice available here if these particular issues are submitted to arbitration is between an award denying all meaningful relief to the Union on those issues and one which could not be enforced without causing Menasco to violate its collective bargaining agreement, with the Union representing all current employees at the other plants involved. Under these circumstances, we think the objectives of national labor policy dictate that arbitration not be compelled on those particular issues. Accordingly, we reverse that portion of the district court's order compelling arbitration on the questions of job transfers and preferential hiring of former Montebello employees at Menasco's Burbank and Pomona plants and the extent to which former Montebello employees who are hired at Burbank or Pomona are entitled to work under the terms of the Howmet collective bargaining agreement.

B. *Laches.*

Menasco argues that we should reverse the district court's granting of summary judgment in favor of the Union, so that Menasco will have an opportunity to present to the court a defense based upon the equitable doctrine of laches. We disagree.

Those circuit courts which have considered the question have disagreed on whether laches may be properly raised as a defense to an action to compel arbitration. The Fourth Circuit has held that the issue of laches, like the issue of compliance with procedural requirements of the collective bargaining agreement, should be considered by the arbitrator, not by the courts. Tobacco Workers International Union, Local 317 v. Lorillard Corp., 4 Cir., 1971, 448 F.2d 949, 958. The Sixth and Seventh Circuits, plus the Fifth Circuit by implication, have reached the opposite conclusion. Amalgamated Clothing Workers of America v. Ironall Factories Co., 6 Cir., 1967, 386 F.2d 586, 591–592; International Union of Operating Engineers, Local 150 v. Flair Builders, 7 Cir., 1971, 440 F.2d 557, 559–560; International Assoc. of Machinists v. Hayes Corp., 5 Cir., 1961, 296 F.2d 238, 244.

■ We have not yet had occasion to decide this issue, and we do not consider this case an appropriate vehicle for doing so. Like the employer before us in Lodge 1327, International Association of Machinists & Aerospace Workers v. Fraser & Johnston Co., 9 Cir., 1971, 454 F.2d 88, Menasco did not raise the laches issue in the district court, even though it had ample opportunity to do so. In its answer to the Union's petition to compel arbitration, Menasco raised a number of affirmative defenses; laches was not among them. Under such circumstances we follow the procedure established in *Fraser & Johnston, supra,* and decline to consider the Company's belated contention. 454 F.2d at 92.

C. *District Court's specification of the issues for arbitration.*

■ Menasco objects to the form of the court's order compelling arbitration, insofar as it defined and framed the specific questions which the arbitrator is empowered to decide. Once the court has determined that the issues are arbitrable because covered by the collective bargaining agreement on its face, the Company contends, the judicial function is ended. The arbitrator must then be

**1256**

free to frame the issues in light of his interpretation of the collective bargaining agreement, and even to refuse to consider the merits of some of the issues found by the court to be arguably arbitrable. Those prerogatives of the arbitrator, it is argued, are circumscribed by the district court's detailed and specific delineation of the issues to be submitted to arbitration.

We doubt that the arbitrator will feel seriously limited by the district court's order in his ability to consider all aspects of the issues presented to him. However, we agree that the flexible nature of the arbitration process requires that the arbitrator be given as much freedom as possible—from the framing of the issues themselves to the fashioning of appropriate remedies. The district court's function in the process is essentially ended once it has found the collective bargaining agreement susceptible of an interpretation which would cover the dispute; it should not attempt in the usual case to frame the precise question which the arbitrator must decide.[4] *See* Avon Products, Inc. v. International Union, United Auto Workers of America, AFL–CIO, Local 710, 8 Cir., 1967, 386 F.2d 651, 657. Likewise the arbitrator should not be foreclosed from passing on the question of arbitrability; the court has merely made the threshold decision that the collective bargaining agreement is susceptible of an interpretation making the dispute arbitrable, *i. e.,* the issue is *prima facie* arbitrable. The arbitrator should not be prevented from deciding whether or not he will so interpret the agreement.

The matter is remanded to the district court with directions to reframe its decree in a manner consistent with this opinion.

---

4. The trial court recognized this principle when it granted the Union's motion for summary judgment in open court:
   "Mr. Carr [counsel for Menasco]: Your Honor, the dispute that you are ordering to be arbitrated, are they as framed—
   "The Court: No, no. They are not. I am not limiting the arbitration. I am not limiting the arbitrator to frame his own issues.
   "Mr. Carr: The arbitrator is going to have the authority and responsibility to frame his own issues, is that right?
   "The Court: Correct, correct."