282 F.3d 746
 HUBER, HUNT & NICHOLS, INC., Plaintiff-Counter-Defendant-Appellant,
v.
UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPEFITTING INDUSTRY, LOCAL 38, Defendant-Counter-Claimant-Appellee.
 No. 00-17085.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted October 19, 2001.
 Filed March 6, 2002.
 
 James Watson, Stanton, Key & Watson LLP, San Francisco, CA, for the plaintiff-counter-defendant-appellant.
 Geoffrey Piller, Beeson, Tayer & Bodine, P.C., San Francisco, CA, for the defendant-counter-claimant-appellee.
 Appeal from the United States District Court for the Northern District of California, Charles R. Breyer, District Judge, Presiding. D.C. Nos. CV-00-0578-CRB, CV-00-2377-CRB.
 Before: BEEZER, TROTT and TALLMAN, Circuit Judges.
 BEEZER, Circuit Judge.
 
 
 1
 In this case, two arbitrators claim the power to decide a labor dispute under the same umbrella labor agreement. The parties to the agreement disagree over which arbitrator had power to arbitrate, what type of grievance was before the arbitrators and whether both grievances concerned the same dispute. Each party asks us to confirm one award and vacate the other.
 
 
 2
 The district court held that, under the circumstances, the question of arbitrability turned on analysis of the grievances rather than on analysis of the agreement. We have jurisdiction, and we reverse.
 
 
 3
 * The facts are undisputed. Appellant Huber, Hunt & Nichols, Inc. (the "General Contractor") was hired to build Pacific Bell Park, the new ballpark of the Giants baseball club in San Francisco, California. Workers from several AFL-CIO-affiliated unions, including appellee United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry, Local 38 ("Local 38"), were hired to perform the construction work. The General Contractor and the unions entered into a prehire agreement[1] (the "Project Stabilization Agreement" or "Agreement") reconciling the terms of the unions' various collective bargaining agreements for the duration of construction. The Agreement lists and incorporates by reference the unions' collective bargaining agreements, but makes them unenforceable to the extent that they are "contrary to or in conflict with" the Agreement or "the intent and meaning" thereof.
 
 
 4
 The Project Stabilization Agreement recites an intent to prevent delays and promote efficiency by establishing grievance procedures for settling "all misunderstandings, disputes or grievances which may arise" during construction of the ballpark. Article 5 of the Agreement requires that jurisdictional disputes[2] be decided by discussions between the adverse unions' local leadership or, failing that, their international leadership. Article 6 requires that non-jurisdictional disputes "concerning any application or interpretation of the Project Stabilization Agreement" be decided by a designated project-wide arbitrator (the "Permanent Arbitrator"). Non-jurisdictional disputes concerning any application or interpretation of an incorporated collective bargaining agreement, in contrast, are to be decided according to that collective bargaining agreement's "applicable grievance procedure." Local 38's collective bargaining agreement specifies that grievances arising under it are to be decided by an arbitration committee, half of whom must be members of Local 38 (the "Local Committee" or "Committee").
 
 
 5
 After construction commenced, Local 38 filed a grievance against the General Contractor with the Local Committee. Local 38 claimed that a subcontractor had violated Local 38's collective bargaining agreement by assigning work to carpenters and laborers that should have been assigned to Local 38 pipefitters.[3] Local 38 sought contract damages in the amount of lost wages.
 
 
 6
 In response, the General Contractor filed a grievance against Local 38 with the Permanent Arbitrator. The General Contractor claimed that Local 38's grievance violated the Project Stabilization Agreement by bypassing the Agreement's Article 5 procedures for resolving jurisdictional disputes. The General Contractor asked that Local 38 be ordered to resolve the dispute pursuant to Article 5 instead of by arbitration before the Local Committee. Each party denied that the other's grievance was arbitrable. Each refused to make an appearance in the other's grievance proceeding.[4]
 
 
 7
 The Permanent Arbitrator issued an award. He concluded that he had power to decide the grievance before him and that the work assignment question was a jurisdictional dispute. He ordered Local 38 to use the Article 5 jurisdictional dispute resolution procedure instead of arbitration.
 
 
 8
 A week later the Local Committee issued an award. The Committee determined that it had power to decide the grievance before it and that the work assignment question was not a jurisdictional dispute. The Committee ruled that the General Contractor had violated Local 38's collective bargaining agreement and awarded lost wages as contract damages.
 
 
 9
 The General Contractor and Local 38 sued each other in federal court. Each sought to have its own award confirmed and the other's vacated. The district court granted summary judgment in favor of Local 38. The General Contractor appeals.
 
 
 10
 The district court had jurisdiction over this action "for violation of contracts between an employer and a labor organization...." Labor Management Relations Act § 301(a), 29 U.S.C. § 185(a) (1998). See Millmen Local 550, United Bhd. of Carpenters & Joiners v. Wells Exterior Trim, 828 F.2d 1373, 1375 (9th Cir.1987). We have jurisdiction pursuant to 28 U.S.C. § 1291.
 
 II
 
 11
 We address whether the arbitrators had the power to arbitrate the matters before them. Arbitrability is generally a question for the court, rather than the arbitrator, except where a broad arbitration clause is susceptible to more than one interpretation on the question of arbitrability. United Food & Commercial Workers Union, Local 770 v. Geldin Meat Co., 13 F.3d 1365, 1370 (9th Cir.1994); Southern Cal. Dist. Council of Laborers v. Berry Constr., Inc., 984 F.2d 340, 344 (9th Cir.1993). We conclude that only the Permanent Arbitrator had power to arbitrate. The text, structure and context of the Project Stabilization Agreement assign to him the threshold determination whether or not a dispute is jurisdictional. The Permanent Arbitrator's award must be confirmed and the Local Committee's award vacated.
 
 A.
 
 12
 The Permanent Arbitrator made the first ruling. He ruled that the dispute before him was jurisdictional. Local 38 contends that the Permanent Arbitrator lacked the power to issue his award. Local 38 notes that, under Article 6.4 of the Project Stabilization Agreement, non-jurisdictional disputes "concerning the application or interpretation of" a local bargaining agreement are not assigned to the Permanent Arbitrator and must instead follow the grievance procedures of the applicable local collective bargaining agreement.
 
 
 13
 The district court reviewed National Labor Relations Board rulings defining "jurisdictional dispute" and compared them to the claims contained in the grievances before each arbitrator. The court concluded that (1) no jurisdictional dispute existed, (2) Local 38's grievance arose under the collective bargaining agreement, and (3) for both of these reasons, the Permanent Arbitrator had no power to arbitrate the matter before him.
 
 
 14
 The district court's arbitrability inquiry contains a fundamental fallacy. The court assumes that it, not the arbitrator, should decide whether or not the work assignment dispute is a "jurisdictional dispute." But this begs the threshold question. "The proper inquiry for this court is not whether the underlying dispute is arbitrable in and of itself; rather, we must ask whether the overall dispute, which encompasses the disagreement over the nature of the underlying dispute, is arbitrable under the terms of the [Project Stabilization Agreement]." Berry, 984 F.2d at 343. The underlying dispute here is the work assignment dispute. Whether the Permanent Arbitrator has the power to decide the work assignment dispute turns on the nature of that dispute. Before we reach the question of the Permanent Arbitrator's power to arbitrate the work assignment dispute, we must first decide whether he has the power to decide the arbitrability question himself.
 
 
 15
 The Project Stabilization Agreement sets forth the mutual intent of Local 38 and the General Contractor to "establish effective and binding methods for the settlement of all misunderstandings, disputes or grievances which may arise by establishing binding grievance and arbitration procedures" (emphases added). The broad arbitration clause routes disputes to one of two arbitrators based on whether they arise under the Project Stabilization Agreement or under an incorporated local collective bargaining agreement. Jurisdictional disputes are expressly excepted from arbitration and consigned to a non-arbitral resolution procedure. The district court decided that this text and structure has assigned to the court the determination whether any particular grievance involved a jurisdictional dispute. We disagree.
 
 
 16
 We decline to label the underlying dispute here as either a jurisdictional or a contractual dispute. Rather, we examine whether the overall dispute is arbitrable. Berry, 984 F.2d at 343. When the Project Stabilization Agreement consigns all questions concerning the application or interpretation of the Agreement "excluding jurisdictional disputes" to the Permanent Arbitrator, it is implicitly assigning to him the threshold determination whether a dispute is jurisdictional. Under any other interpretation, a trip to court would be necessary whenever the parties disagreed, or even purported to disagree, whether a dispute was "jurisdictional" in character. It would be impossible to force any party to the Project Stabilization Agreement into the Article 5 procedures for resolving jurisdictional disputes without a court order. "[T]he arbitration clause would be swallowed up by the exception." United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 584, 80 S.Ct. 1347, 1354, 4 L.Ed.2d 1409 (1960).[5]
 
 
 17
 Moreover, the Project Stabilization Agreement's broad arbitration clause explicitly assigns to the Permanent Arbitrator all non-jurisdictional disputes concerning the application or interpretation of the Agreement. The question of the character of the dispute in this case turns on the application and interpretation of the phrase "jurisdictional dispute" in Articles 5 and 6 of the Project Stabilization Agreement, not on the language of Local 38's collective bargaining agreement. It is difficult to imagine an inquiry that more squarely "concern[s] the application or interpretation of the Project Stabilization Agreement" and not the local collective bargaining agreement.
 
 
 18
 Finally, the Project Stabilization Agreement contains provisions, such as Articles 2.2 and 9.2, indicating that in any conflict between the Agreement and a local collective bargaining agreement, the Project Stabilization Agreement trumps the local agreement. Logic suggests that where, as here, one party seeks to have the Permanent Arbitrator determine whether a certain dispute is jurisdictional and the other seeks to have an arbitrator under a local collective bargaining agreement make the same determination, the Permanent Arbitrator under the Project Stabilization Agreement should have the power to resolve the conflict.
 
 
 19
 In interpreting and enforcing labor agreements, "`special heed should be given to the context in which[the] agreements are negotiated and the purpose which they are intended to serve.'" NLRB v. Universal Servs., Inc., 467 F.2d 579, 584 n. 6 (9th Cir.1972) (quoting United Steelworkers v. American Mfg. Co., 363 U.S. 564, 567, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960)). Only one arbitrator involved with this construction project has power over all the contractors and employees involved: the Permanent Arbitrator. The Project Stabilization Agreement was intended to promote economical and extra-judicial resolution of disputes arising during construction. That purpose is fostered by allowing the Permanent Arbitrator to assign disputes among the Project Stabilization Agreement's various dispute resolution procedures. It is not served by permitting the various parties merely by artfully wording their grievances to define the character of, and therefore the proper forum for, disputes.
 
 
 20
 Local 38 relies on Frederick Meiswinkel, Inc. v. Laborer's Union Local 261, 744 F.2d 1374 (9th Cir.1984), for the proposition that arbitrability is a matter for the court to decide. See also New England Mech., Inc. v. Laborers Local Union 294, 909 F.2d 1339 (9th Cir.1990). In Meiswinkel, a labor agreement had a broad arbitration clause with an exception for "jurisdictional disputes." 744 F.2d at 1376. The arbitrator decided the dispute on the merits notwithstanding this exception. Id. at 1377. We vacated the award as implausible. Id.
 
 
 21
 Meiswinkel and New England Mechanical are inapposite to this case. In Meiswinkel there was no real controversy whether a jurisdictional dispute existed; "[i]t [wa]s clear from the uncontroverted facts in the record that the dispute was jurisdictional" and that the employer was "caught between rival demands." 744 F.2d at 1377. Nor was the arbitrator in Meiswinkel empowered to decide such a dispute on the merits; like the Permanent Arbitrator, he was expressly barred from doing so. Id. New England Mechanical presented essentially the same factual situation, and relied on Meiswinkel to come to the same result. See 909 F.2d at 1341, 1345.
 
 
 22
 In contrast, whether a jurisdictional dispute exists in the present case is hotly contested. The Permanent Arbitrator did not attempt to decide a jurisdictional dispute on the merits. He merely concluded that a jurisdictional dispute existed, and then consigned it to non-arbitral resolution.
 
 
 23
 Courts "have no business determining the merits of a grievance under the guise of deciding questions of arbitrability," Geldin Meat, 13 F.3d at 1368. The district court determined arbitrability by relying on rulings of the National Labor Relations Board defining the term "jurisdictional dispute." The extended inquiries into this complex question that occupy a large portion of the district court's order and fill the parties' briefs illustrate only too well the dangers of "becom[ing] entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause." Warrior & Gulf, 363 U.S. at 585, 80 S.Ct. at 1354.[6]
 
 
 24
 In sum, the Project Stabilization Agreement gives the Permanent Arbitrator, rather than a court, the power to decide whether grievances arising between the Agreement's parties are jurisdictional in character. The purpose of the Project Stabilization Agreement is to reconcile the various collective bargaining agreements involved with the project and to promote the simple and economical resolution of disputes. The Agreement's arbitration clause bars arbitration of jurisdictional disputes, not arbitration of the question whether a jurisdictional dispute exists. The Project Stabilization Agreement's language, structure and purpose all show an intent to assign questions concerning the character of disputes to the Permanent Arbitrator. The district court's conclusion that the Permanent Arbitrator lacked the power to determine whether a jurisdictional dispute existed is inconsistent with the intent of the parties and national labor policy.
 
 
 25
 We hold that the Permanent Arbitrator had the power to decide whether a jurisdictional question existed. The Permanent Arbitrator decided that this controversy whether work ought to have been assigned to members of the Laborers and Carpenters union or to members of the Pipefitters union gave rise to a jurisdictional dispute between unions. We will not disturb this plausible conclusion.[7] See New England Mech., 909 F.2d at 1345-46 (observing that arbitrators' awards are generally subject to "very limited and deferential review"). The award of the Permanent Arbitrator must be confirmed.
 
 B.
 
 26
 We turn to the Local Committee's award. The district court decided that the dispute before the Local Committee was not jurisdictional in nature. Proceeding on the basis of this determination, the district court concluded that the dispute was arbitrable by the Local Committee and confirmed the Local Committee's award. We conclude that under the circumstances, the question whether the matter before the Local Committee was jurisdictional in nature was for the Permanent Arbitrator, not the district court or the Local Committee, to decide.
 
 
 27
 The Permanent Arbitrator had the power to determine that the work assignment dispute was jurisdictional and order Local 38 to pursue non-arbitral dispute resolution under Article 5 of the Project Stabilization Agreement. The Permanent Arbitrator's awards are final and binding upon the parties to the Agreement. When Local 38 refused to obey the Permanent Arbitrator's award and continued to pursue its grievance before the Local Committee, Local 38 violated the terms of the Project Stabilization Agreement.
 
 
 28
 Local 38 argues, however, that even assuming the Permanent Arbitrator had power to issue his award, we must also confirm the Local Committee's award because the grievance before the Committee involved a different dispute than the one before the Permanent Arbitrator. Local 38 notes that we distinguish "jurisdictional" disputes, where multiple unions seek the same work, from "contract" disputes, where employers "subcontract[] work away from its employees to the employees of another contractor ... disregarding the provisions of its own collective bargaining agreement...." USCP-WESCO v. NLRB, 827 F.2d 581, 585 (9th Cir.1987); see also Assoc. Gen. Contractors, Inc. v. Int'l Union of Operating Eng'rs, Local 701, 529 F.2d 1395, 1398 (9th Cir.1976); Van Waters, 913 F.2d at 741-42. Local 38 argues that the lost wages remedy ordered by the Committee can coexist with the dispute resolution remedy ordered by the Permanent Arbitrator, and that we must confirm the Committee's award whether or not we confirm the Permanent Arbitrator's award.
 
 
 29
 We generally will not vacate either of two "bipartite" arbitration awards by equipollent arbitrators, United States Postal Serv. v. American Postal Workers Union, 893 F.2d 1117, 1120 (9th Cir.1990), except "to the extent necessary." Sea-Land Serv., Inc. v. Int'l Longshoremen's & Warehousemen's Union, Locals 13, 63 & 94, 939 F.2d 866, 873 (9th Cir.1991). We may confirm two such awards even if their reasoning is incompatible. Louisiana Pac. Corp. v. Int'l Bhd. of Elec. Workers, 600 F.2d 219, 223-25 (9th Cir.1979). Nevertheless, Local 38's argument misses the point. The Permanent Arbitrator determined that Local 38 could not arbitrate its grievance before the Local Committee. Local 38 could not continue to prosecute its grievance before the Committee without violating the very Project Stabilization Agreement that Local 38 claimed gave the Committee the power to arbitrate the grievance in the first place.
 
 
 30
 The two arbitrators are not equipollent with respect to arbitrability determinations. The Project Stabilization Agreement gave the Permanent Arbitrator power to decide the character of the work assignment dispute. If both arbitrators could plausibly conclude that they had the power to do so, we would have to uphold both arbitrability determinations. See Berry, 984 F.2d at 343-44. In this case, given the text and context of the Project Stabilization Agreement, the Local Committee could not plausibly conclude that it had the power to contradict the Permanent Arbitrator's arbitrability determination.
 
 
 31
 In two consecutive and parallel clauses, Article 6 of the Project Stabilization Agreement divides arbitrable controversies between the Permanent Arbitrator and the Local Committee based on whether they arise out of the Project Stabilization Agreement or Local 38's collective bargaining agreement. Taken out of context, these parallel clauses might permit either arbitrator to plausibly assert power to decide the character, and thus the arbitrability, of disputes. Cf. Bauhinia Corp. v. China Nat'l Mach. & Equip. Imp. & Exp. Corp., 819 F.2d 247, 250 (9th Cir.1987) (holding that similar parallel arbitration venue clauses were ambiguous and "le[ft] the issue [of venue] open"). But any ambiguity disappears in light of the Project Stabilization Agreement's stated purpose: to reconcile various labor agreements and provide for streamlined, economical dispute resolution. As we observed in New England Mechanical, even where a dispute is concededly jurisdictional,
 
 
 32
 it is not important ... whether the allocation of the work is ultimately made by the employer [or] the ... union[].... The issue is whether this jurisdictional dispute should be resolved by an arbitration panel whose members include representatives from only one of the affected unions. It seems unnatural to hold that the parties would have intended any such thing.
 
 
 33
 New England Mech., 909 F.2d at 1346.
 
 
 34
 This reasoning applies with even greater force where the parties cannot even agree on the character of the dispute. The Local Committee includes no representatives of any union other than Local 38. It would seem unnatural, not to mention anarchical, if each collective bargaining agreement's arbitrator could decide for itself whether it could resolve disputes that could detrimentally affect other unions or the General Contractor. It is far more logical to conclude that the Project Stabilization Agreement grants the Permanent Arbitrator the power to decide the dispute's character and, if need be, forcibly channel it into multi-union resolution.[8]
 
 
 35
 Our interpretation is reinforced by considerations of federal labor policy. See Lewis v. Benedict Coal Corp., 361 U.S. 459, 470-71, 80 S.Ct. 489, 495-96, 4 L.Ed.2d 442 (1960). It is true that ordinarily "judicial deference to an arbitrator's decision in a labor case is stronger than under arbitration obtained in the ordinary commercial context." Louisiana Pac., 600 F.2d at 223 n. 10. But ordinarily "`arbitration is the substitute for industrial strife.'" Id. (emphasis added) (quoting Warrior & Gulf, 363 U.S. at 578, 80 S.Ct. at 1351). Here, by contrast, strong deference to the Local Committee's determination of arbitrability would lead to "the very kind of industrial strife and unrest which it is the objective of national labor policy to avoid." Int'l Ass'n of Machinists v. Howmet Corp., 466 F.2d 1249, 1253 (9th Cir.1972).
 
 
 36
 Howmet presents the analogous context of orders compelling labor arbitration. In that context we said:
 
 
 37
 [T]he underlying objective of the policy favoring the resolution of disputes by arbitration is that of avoiding industrial strife and promoting industrial harmony through a fair, fast, and flexible system utilizing neutral but knowledgeable "peace-makers." That objective is served by a strong judicial policy ... of broadly construing the arbitration clauses of collective bargaining agreements and requiring the disputing parties to arbitrate whenever their agreement is possibly susceptible of an interpretation permitting such action. However, when situations arise, as here, in which the objective of avoiding industrial strife and disharmony would not be served by compelling arbitration, a court has the obligation to examine the potential consequences of compelling arbitration and to tailor its order accordingly.
 
 
 38
 Id. We proceeded to refuse to enforce a collective bargaining agreement's arbitration clause on policy grounds. Id. at 1253-55.
 
 
 39
 These policy considerations are equally applicable to project-wide labor agreements that exist for the purpose of unifying dispute resolution procedures and quelling labor strife. Even if the Project Stabilization Agreement arguably permitted the Local Committee to make arbitrability determinations without regard to contrary determinations by the Permanent Arbitrator, enforcing such an award would be against federal labor policy. "It is the [Local Committee's] arbitration itself ... which gives rise to the unrest and dissatisfaction which national labor policy seeks to prevent." Id. at 1255.
 
 III
 
 40
 The substantive dispute between the parties in this case is distinctly different from the dispute over which arbitrator had the power to hear the matter. The district court erroneously concluded that the determination of who had the power to hear the matter depended upon the substance of the grievances. We hold instead that the answer depended upon the text, structure, and context of the project-wide labor agreement, and that the question was properly decided by the Permanent Arbitrator. The Permanent Arbitrator's award must be confirmed, and the Local Committee's award vacated.
 
 
 41
 The cause is REVERSED and REMANDED to the district court for further proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 Prehire agreements are short-term umbrella labor contracts that preset dues, wage, representation, grievance and hiring practices for a particular construction projectSee Bldg. & Constr. Trades Council v. Assoc. Builders & Contractors, Inc., 507 U.S. 218, 231-32, 113 S.Ct. 1190, 1198, 122 L.Ed.2d 565 (1993). They are illegal except in the construction industry. See National Labor Relations Act § 8(e), 29 U.S.C. § 158(e) (2000).
 
 
 [2]
 The Project Stabilization Agreement does not define "jurisdictional dispute" and the parties vigorously contest the precise meaning of this term. In the labor field, this term of art generally refers to disputes "involv[ing] a single employer caught between the conflicting demands of two or more unions."Assoc. Gen. Contractors, Inc. v. Int'l Union of Operating Eng'rs, Local 701, 529 F.2d 1395, 1397 (9th Cir.1976).
 
 
 [3]
 The carpenters and laborers had their own union representation
 
 
 [4]
 The General Contractor made a "special appearance" before the Local Committee solely to deny that the Local Committee had the power to decide the grievance
 
 
 [5]
 The district court citesVan Waters & Rogers, Inc. v. IBT, Local 70, 913 F.2d 736 (9th Cir.1990), for the proposition that, where a labor arbitration clause expressly excludes jurisdictional disputes from arbitration, "any ruling on a jurisdictional dispute would be outside the scope of the arbitrator's authority." Id. at 740. But the Van Waters court follows this broad dictum with the clarification that disputes associated with a jurisdictional dispute need not be jurisdictional themselves. Id. at 741. The Van Waters court in fact upheld the arbitration award at issue in the case. Id. at 742 (noting that grievance was confined to non-jurisdictional dispute by stipulation of parties). Similarly, the question facing the Permanent Arbitrator, i.e., whether the underlying controversy was a jurisdictional dispute, was not itself a jurisdictional dispute.
 
 
 [6]
 In looking to Article 5's jurisdictional dispute resolution procedures to inform our interpretation of Article 6's arbitration provisions, we in no way violate the general requirement that we "not look to substantive provisions,"Westinghouse Hanford Co. v. Hanford Atomic Metal Trades Council, 940 F.2d 513, 516 (1991), when determining arbitrability. See id. at 521; Bldg. Materials & Constr. Teamsters Local No. 216 v. Granite Rock Co., 851 F.2d 1190, 1194-95 (9th Cir.1988). We may look to substantive provisions "insofar as it is necessary to consider exclusions to an arbitration clause." Westinghouse Hanford, 940 F.2d at 521 (emphasis added). In this case, we are interpreting Article 5's express exclusion of "jurisdictional disputes" from arbitration.
 
 
 [7]
 Local 38 urges us to characterize the work assignment dispute as acontractual dispute over whether work assignment promises were kept, rather than a jurisdictional dispute over who should actually do the work in question. See infra Part II-B. Given that the Permanent Arbitrator had the power to arbitrate, however, we must defer to his characterization of what type of dispute it is, "as long as [he is] even arguably construing or applying the contract." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987).
 
 
 [8]
 Indeed, the Project Stabilization Agreement is designed to trump the local collective bargaining agreements when there is a conflict. Our cases that have permitted two arbitration awards,see Assoc. Gen., 529 F.2d 1395; Louisiana Pac., 600 F.2d 219, did not involve overarching, multi-union labor agreements like the Project Stabilization Agreement.