**FOLEY–WISMER & BECKER and Shurtleff & Andrews Constructors, Petitioners,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 80–7272.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 17, 1981.

Decided July 22, 1982.

Wesley M. Wilson, Yakima, Wash., for petitioners.

Ruah Donnelly Lahey, Margery E. Lieber, Deputy Asst. Gen. Counsel, Washington, D. C., for respondent.

Before BROWNING, Chief Judge, and WRIGHT, CHOY, GOODWIN, SNEED, ANDERSON, SKOPIL, SCHROEDER, POOLE, FERGUSON and NELSON, Circuit Judges.

FERGUSON, Circuit Judge:

Petitioners seek review of an order of the National Labor Relations Board quashing notice of a hearing under section 10(k) of the National Labor Relations Act, 29 U.S.C. § 160(k).[1] Other circuits have held that such an order is not appealable.[2] This circuit has taken a different view, holding that such orders are appealable final orders. *Waterway Terminals Co. v. NLRB*, 467 F.2d 1011 (9th Cir. 1972). The present case was taken en banc to consider whether *Waterway* should be overruled. The considerations that supported our decision in *Waterway* are as compelling now as they were when that case was decided. We therefore decline to overrule it.

1. The order at issue in this appeal is styled by the NLRB an order "quashing notice of hearing," and is occasionally so described in this opinion. The label is confusing, since the order typically issues, as it did in this case, after the hearing in question has already been held. The order is therefore sometimes described in this opinion as an order "quashing hearing." See Section II, *infra.*

2. *Shell Chemical Co. v. NLRB*, 495 F.2d 1116 (5th Cir. 1974), *cert. denied,* 421 U.S. 963, 95 S.Ct. 1951, 44 L.Ed.2d 449 (1975); *Trane Co. v. NLRB*, 68 LRRM 3024 (6th Cir. 1968); *Rafel & Co. v. Local 9, IBEW*, 47 LRRM 2897 (7th Cir.), *cert. denied,* 366 U.S. 948, 81 S.Ct. 1902, 6 L.Ed.2d 1241 (1961); *Manhattan Construction Co. v. NLRB*, 198 F.2d 320 (10th Cir. 1952).

3. Section 8(b)(4)(D) provides, in pertinent part:
   (b) It shall be an unfair labor practice for a labor organization or its agents . . .
   (4)(i) to engage in, or to induce or encourage any individual . . . to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is . . .

## I. The Nature of the Case.

This case arises out of a labor dispute in connection with the construction of Washington Nuclear Power Units 1 and 4 on the Hanford atomic energy reservation near Richland, Washington. The petitioners, Foley-Wismer & Becker and Shurtleff & Andrews Constructors ("the Companies"), filed unfair labor practice charges with the National Labor Relations Board ("the Board") alleging violations of §§ 8(b)(4)(D)[3] and 8(b)(6)[4] of the National Labor Relations Act ("the Act"), 29 U.S.C. §§ 158(b)(4)(D), (b)(6). After investigation, the General Counsel dismissed the § 8(b)(6) charges, but issued a Notice of Hearing under § 10(k)[5] of the Act, 29 U.S.C. § 160(k), with respect to the § 8(b)(4)(D) charges. After the hearing, the Board, by a divided vote, found that there was no violation of § 8(b)(4)(D), and issued an order quashing the Notice of Hearing in the § 10(k) proceeding. 249 NLRB No. 10. The Companies brought this appeal from that order.

In dispute in this case, beyond the jurisdictional issue, are both the correct stan-

(D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work . . . .

4. Section 8(b)(6) of the Act prohibits featherbedding activity by a labor organization or its agents.

5. Section 10(k) provides:
   Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4)(D) of section 158(b) of this title, the Board is empowered and directed to hear and determine the dispute out of which such unfair labor practice shall have arisen, unless, within ten days after notice that such charge has been filed, the parties to such dispute submit to the Board satisfactory evidence that they have adjusted, or agreed upon methods for the voluntary adjustment of, the dispute. Upon compliance by the parties to the dispute with the decision of the Board or upon such voluntary adjustment of the dispute, such charge shall be dismissed.

dard for determining whether a jurisdictional dispute within the meaning of § 8(b)(4)(D) exists, and the correct factual description of the labor dispute which gave rise to the § 10(k) hearing in the first place. The three-judge merits panel to which this case is referred as a result of our decision today will be able to examine the record and draw its own conclusions as to those facts and the applicable law. Because we only consider the jurisdictional question in this en banc proceeding, only the procedural facts recounted above are relevant to our decision. We express no opinion about, and attempt no characterization of, the substance of the dispute.

## II. Section 10(k) Procedure.

Section 8(b)(4)(D) of the Act is aimed at "jurisdictional" strikes. It prohibits a union from striking or threatening to strike an employer to force the assignment of work to one group of employees rather than another. However, because Congress believed "that it is more important to industrial peace that jurisdictional disputes be settled permanently than it is that unfair labor practice sanctions for jurisdictional strikes be imposed upon unions," *NLRB v. Radio Engineers*, 364 U.S. 573, 577, 81 S.Ct. 330, 333, 5 L.Ed.2d 302 (1961), it created in section 10(k) of the Act a special procedure for the prompt resolution of such disputes. *Radio Engineers, supra*, 364 U.S. at 576–77, 81 S.Ct. at 332–33.

Unfair labor practice charges brought under § 8(b)(4)(D) of the Act are handled in a way quite different from all other charges that may be brought under the Act. *Compare* 29 C.F.R. §§ 101.31—.36 (1981) (§ 10(k) procedure) *with, e.g., id.* §§ 101.2 —.16 (procedure under §§ 10(a)—10(i)). That procedure has been explained and clarified several times by the Supreme Court. *ITT v. Electrical Workers*, 419 U.S. 428, 95 S.Ct. 600, 42 L.Ed.2d 558 (1975); *NLRB v. Plasterers Union*, 404 U.S. 116, 92 S.Ct. 360, 30 L.Ed.2d 312 (1971); *NLRB v. Radio Engineers, supra*, 364 U.S. 573, 81 S.Ct. 330, 5 L.Ed.2d 302. When a charge is brought under § 8(b)(4)(D), the Regional Director conducts an investigation and, if appropriate, issues a notice of hearing. 29 C.F.R. § 101.33 (1981). The hearing is to be within 10 days of the initial filing of charges. If the parties fail to reach a voluntary resolution of the dispute, a non-adversary hearing is held. The purpose of this hearing is simply to assemble a full record of the relevant facts. The hearing officer makes no recommendation as to resolution of the dispute. *Id.* § 101.35. The record thus assembled is transmitted to the Board, which either "determines the dispute" by issuing a § 10(k) award—an assignment of the disputed work to one of the contending unions—or ends the proceedings by determining that no jurisdictional dispute exists within the meaning of § 8(b)(4)(D). In the latter event, the Board issues an order "quashing notice" of the § 10(k) hearing that was already held, and dismissing the charge. That is what happened in the present case.

In the event that the Board determines that a jurisdictional dispute does exist, and makes a work award under § 10(k), the pressure on the parties to settle the dispute intensifies. If they comply with the work award, the Board dismisses the charges. If the losing union refuses to comply (by continuing to strike or threaten to strike), the Board issues a complaint and the prosecution of the § 8(b)(4)(D) charge goes forward against that union. A final Board decision on that complaint is then appealable under § 10(f) of the Act.

## III. The Contrast Between § 10(k) Awards and Orders Quashing § 10(k) Hearings.

Cases holding that orders quashing § 10(k) hearings are not appealable have relied on the supposed analogy between such orders and § 10(k) work assignment awards. *See, e.g., Shell Chemical Co. v. NLRB, supra*, 495 F.2d at 1122–23. However, the differences between § 10(k) work assignment awards and orders quashing § 10(k) hearings are more striking than the similarities. First and most important, when a § 10(k) award has been made, there

has been a preliminary determination by the Board that a jurisdictional dispute exists, and the machinery which Congress expressly designed for the resolution of such disputes—machinery which embodies a different combination of economic coercion and Board action than is available for any other kind of labor dispute—has been put in motion. Congress directed that such disputes be resolved as quickly as possible, and also that the resolution be achieved, if possible, by the parties themselves. Thus, if the § 10(k) award is in favor of the striking union, the employer's § 8(b)(4)(D) charges will be dismissed, and the outcome of the dispute will depend on the union's ability to coerce compliance through economic pressure. On the other hand, if the § 10(k) award goes against the striking union, it will be under pressure to negotiate a quick settlement of its dispute with the employer, since continued strike activity will almost surely result in an adverse ruling on the § 8(b)(4)(D) complaint against it.

In contrast, when the Board has quashed notice of a § 10(k) hearing, a finding is implied that there is no jurisdictional dispute. See *NLRB v. Plasterers Union, supra*, 404 U.S. 116, 134–35, 92 S.Ct. 360, 371, 30 L.Ed.2d 312. The machinery designed by Congress to resolve jurisdictional disputes stops operating, and the parties are relegated to pursuing whatever other remedies they can find. Such remedies may be provided by other provisions of federal or state law, either at the administrative or at the judicial level, or the parties may be forced to settle their differences through the familiar and unwelcome avenue of continued economic warfare. In any event, the special procedure which Congress saw fit to create for the speedy resolution of jurisdictional disputes will have been taken out of operation by the quashing of notice of the § 10(k) hearing. This result is appropriate, of course, if the Board is correct in its

judgment that the dispute is not jurisdictional. But where the Board has erred in that determination, the congressional purpose in enacting § 10(k) and § 8(b)(4)(D) will have been frustrated.

Corollary to the distinction just noted between § 10(k) awards and orders quashing § 10(k) hearings is a point fundamental to analysis of the appealability issue. On the one hand, to allow appeals to be taken from § 10(k) awards would involve the courts in a direct interference with the normal operation of the § 8(b)(4)(D) machinery. Just at the point where Congress intended the parties to be under intense pressure to settle their dispute quickly by conforming to the § 10(k) award, a lengthy and expensive judicial review would suddenly be injected into the process. On the other hand, no such interruption is entailed when appeals are allowed from orders quashing § 10(k) hearings. It is not possible to interrupt a process which has already come to an end.

The importance of the distinction between § 10(k) awards and orders quashing § 10(k) hearings is difficult to overstate. As we explained in *Henderson v. ILWU Local 50*, 457 F.2d 572, 577–78 (9th Cir. 1972), if § 10(k) awards were reviewable, courts would have to review both the award and, later, the unfair labor practice determination, which would "doubly offend the deeply entrenched policy against premature and piecemeal appellate proceedings." *Id.* at 577. But when the NLRB quashes a notice of a § 10(k) hearing, the disputing union can continue to picket without engaging in an unfair labor practice. The result is that the employer being picketed cannot secure a judicial hearing on the propriety of the picketing. Therefore, unless courts can review an NLRB decision to quash a notice of a § 10(k) hearing, there is a likelihood of no judicial review.[6] This contrasts with the

---

**6.** Alternative avenues of review will not be absolutely foreclosed in every case. But even considered en masse, the alternatives do not provide a substitute for direct judicial review under § 10(f). If the employer assigns the work to a third group of employees to force the

disputing union to resume picketing, its only avenue of relief will still be through a § 8(b)(4)(D) charge and a § 10(k) hearing. Such an approach is likely to further inflame the labor dispute, and still runs the risk that the NLRB will again erroneously quash the § 10(k)

chance of repetitive review should § 10(k) awards be made reviewable. For this reason, the rationale underlying *Henderson* does not govern whether an order quashing a § 10(k) hearing should be reviewable. This court seems to have recognized this significant distinction in *NLRB v. ILWU Local 50*, 504 F.2d 1209, 1212 n.1 (9th Cir. 1974), where we observed that *Waterway* is perfectly consistent with *NLRB v. Plasterers Union*, 404 U.S. 116, 92 S.Ct. 360, 30 L.Ed.2d 312 (1971), and with *Henderson.*

IV. *Waterway* Has Not Been Overruled by Subsequent Cases.

*Waterway* is consistent with subsequent decisions of the Supreme Court and the Ninth Circuit. No Ninth Circuit or Supreme Court case has held that an order quashing notice of a § 10(k) hearing is not appealable. Cases resolving procedural questions relating to § 10(k) awards, *e.g., ITT v. Electrical Workers*, 419 U.S. 428, 95 S.Ct. 600, 42 L.Ed.2d 558 (1975); *NLRB v. Ironworkers Local 433*, 549 F.2d 634 (9th Cir.), *cert. denied*, 434 U.S. 832, 98 S.Ct. 116, 54 L.Ed.2d 92 (1977), are governed by a different set of considerations than the present case and cannot be regarded as persuasive. As already explained, an order quashing notice of a § 10(k) hearing is quite different from a § 10(k) award.

The leading post-*Waterway* case on § 10(k) awards is *ITT v. Electrical Workers*, 419 U.S. 428, 95 S.Ct. 600, 42 L.Ed.2d 558 (1975). In *ITT*, the Supreme Court held that a § 10(k) hearing is not a proceeding subject to the requirements of the Administrative Procedure Act [the "APA"], 5 U.S.C. § 554. That section of the APA governs "every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing." *Id.*

§ 554(a). Another section of the APA defines "adjudication" as "agency process for the formulation of an order," *id.* § 551(7), and defines "order" as "the whole or part of a final disposition ... of an agency other than rule making," *id.* § 551(6). The Court's analysis focused on the idea that a § 10(k) award is not a final disposition, and that therefore the hearing out of which the award originates is not an adjudication. The Court regarded the § 10(k) hearing as an "intermediate proceeding," 419 U.S. at 443, 95 S.Ct. at 609, and concluded that it would therefore not be subject to § 554 of the APA unless it resulted in a "final disposition" that had "determinate consequences for the party to the proceeding." *Id.* Citing *Plasterers Union*, 404 U.S. at 126, 92 S.Ct. at 367, for the proposition that "the 10(k) decision, standing alone, binds no one," the Court concluded that a § 10(k) award is not the requisite final disposition.

Nowhere in the *ITT* opinion does the Supreme Court direct its attention to the situation confronting us now, where instead of issuing a § 10(k) award, the Board quashes the notice of the § 10(k) hearing. The Court's analysis cannot be carried over intelligibly to the latter situation. First of all, unlike a § 10(k) award, an order quashing notice of a § 10(k) hearing does dispose of the matter as far as the NLRB is concerned. It makes little sense, therefore, to characterize the proceedings that produce such an order as "intermediate" proceedings. Secondly, while a § 10(k) award "binds no one" in the sense that the parties are free to disregard it, there is no parallel feature of an order quashing notice of a § 10(k) hearing. The § 10(k) award does not leave an employer—even an employer unhappy with the terms of the award—

hearing, leaving the employer where it started. If the employer simply maintains the original work assignment to force the union to either accede to the assignment or to file a lawsuit or unfair labor practice charge, the employer is deprived of any remedy unless it can first win the economic war against the striking union. This is an obvious frustration of the congressional purpose behind § 8(b)(4)(D). Of course, the employer can file an unfair labor practice

charge under another relevant section of the Act or seek enforcement of its collective bargaining agreement under section 301 of the Act. But there may not *be* another relevant section. If there is, the relief it provides will not be the same as that available under § 8(b)(4)(D). And applicable collective bargaining agreements may not provide adequate relief either.

without a means of escape from the unfortunate position "between the devil and the deep blue," *NLRB v. Radio Engineers*, 364 U.S. 573, 575, 81 S.Ct. 330, 332, 5 L.Ed.2d 302 (1961), in which a jurisdictional dispute is likely to place it. If the employer complies with the award, either the losing union will also comply, or a § 8(b)(4)(D) complaint will issue and the § 10(k) determination will be subject to further review. In contrast, the employer that is aggrieved by the quashing of a § 10(k) hearing has not been removed from the difficult position that it believes itself to be in. The Board's implicit conclusion that the employer is not really in such a position will provide little solace if the Board is wrong. The aggrieved employer's remedy has been inescapably and finally extinguished by the Board's action.

*ITT* does not explicitly address the issue which we confronted in *Waterway* and confront again today. Nor is the analysis in *ITT* relevant to the issue before us now, except for the contrast which it supplies. In view of the clear substantive differences between § 10(k) awards and orders quashing § 10(k) hearings, the *ITT* decision provides no basis upon which our decision in *Waterway* could be overruled.

V. Refusal to Issue an Unfair Labor Practice Complaint.

*Shell Chemical Co., supra,* 495 F.2d at 422–23, also reasons that an order quashing notice of a § 10(k) hearing should be treated just like a refusal of the General Counsel to issue a complaint on an unfair labor practice charge, which is not appealable. The differences between them were spelled out in *Waterway* and stand in no need of further elaboration here. *See Waterway, supra,* 467 F.2d at 1016.

VI. Deference to Other Circuits.

A decision to overrule *Waterway* would bring our circuit into harmony with those circuits that have concluded that an order quashing notice of a § 10(k) hearing is not appealable. Although our primary duty must always be to apply the law as we understand Congress to have written it, there is much to be said for the view that "a sister circuit's reasoned decision deserves great weight and precedential value." *Aldens, Inc. v. Miller,* 610 F.2d 538, 541 (8th Cir. 1979). A reasoned decision of our own circuit, however, is just as deserving of deference. *Waterway* is such a decision, and we decline to overrule it today out of deference to our colleagues on other circuits.

*Conclusion.*

For the reasons stated above, we reaffirm the decision of this court in *Waterway*, and hold that an order quashing notice of a § 10(k) hearing is appealable. We therefore order that this case be returned to the original three-judge panel for determination on the merits.

SKOPIL, Circuit Judge, with whom BROWNING, Chief Judge, and EUGENE A. WRIGHT, J. BLAINE ANDERSON, and POOLE, Circuit Judges, join, dissenting:

We respectfully dissent from the majority's conclusion that orders quashing section 10(k) hearings are appealable. The majority feels that judicial review of this decision is necessary in the event the Board's determination that no jurisdictional dispute exists is in error, because then "the special procedure which Congress saw fit to create for the speedy resolution will have been taken out of operation." Because judicial review is not always available even when the section 10(k) procedure *has* operated, we do not find the majority's concern compelling. For example, when an employer is dissatisfied with a section 10(k) award, the employer by itself cannot obtain review because the section 8(b)(4)(D) charge will be dismissed. In this situation, even after Congress' special procedure for resolving jurisdictional disputes has operated, the outcome of the dispute would still depend on the union's ability to coerce compliance through economic pressure, without the employer having an avenue of judicial review. For the majority's analysis to be consistent, an employer dissatisfied with an adverse section 10(k) award should also have an avenue of judicial review in the event that

the Board is wrong. However, it is well established that an employer has no avenue of review from an adverse section 10(k) award. *NLRB v. Plasterers' Local Union No. 79*, 404 U.S. 116, 92 S.Ct. 360, 30 L.Ed.2d 312 (1971); *NLRB v. ILWU Local 50*, 504 F.2d 1209, 1212 n.1 (9th Cir. 1974); *Henderson v. ILWU Local 50*, 457 F.2d 572 (9th Cir.), *cert. denied*, 409 U.S. 852, 93 S.Ct. 65, 34 L.Ed.2d 95 (1972); *NLRB v. ILWU Local 6*, 378 F.2d 33 (9th Cir.), *cert. denied*, 389 U.S. 1004, 88 S.Ct. 562, 19 L.Ed.2d 599 (1967). The section 10(k) award, which cuts off further judicial review, could be just as conclusive on the parties as a section 10(k) quashing order. The spectre of the remediless employer is not as imposing as the majority makes it appear.

Other considerations also militate against reviewability. The National Labor Relations Act has set specific limits on reviewability of Board and general counsel actions. For example, employers (or unions) have no right to review of the general counsel's decision not to issue an unfair labor practice complaint. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 138–39, 95 S.Ct. 1504, 1510–11, 44 L.Ed.2d 29 (1975); *Vaca v. Sipes*, 386 U.S. 171, 182, 87 S.Ct. 903, 912, 17 L.Ed.2d 842 (1967); *Bays v. Miller*, 524 F.2d 631, 634 (9th Cir. 1975); *Henderson v. ILWU Local 50*, 457 F.2d at 578 (9th Cir. 1972).

The function of section 10(k) has been viewed as simply "sett[ing] in motion the machinery for an inquiry to determine whether a [section 8(b)(4)(D)] complaint should be issued." *Manhattan Construction Co. v. NLRB*, 198 F.2d 320, 321 (10th Cir. 1952). A complaint on the underlying 8(b)(4)(D) charge will not issue, if at all, until after all section 10(k) provisions have been satisfied. Therefore, the Board's action in determining that there is no jurisdictional dispute and issuing an order quashing a notice of hearing in a section 10(k) proceeding is quite similar to the general counsel's refusal to issue a complaint. Analogously, section 10(k) quashing orders should also be unreviewable.

In addition, there is also a strong analogy between orders quashing notice of hearing in section 10(k) proceedings and representation proceedings under section 9(b). Both types of proceedings have identical procedures for conducting an informal investigatory hearing, both are intended to be conducted promptly, and both result in Board orders that are not determinative of unfair labor practices and are not considered "final adjudications" under the APA. *NLRB v. Ironworkers Local 433*, 549 F.2d 634, 638 (9th Cir.), *cert. denied*, 434 U.S. 832, 98 S.Ct. 116, 54 L.Ed.2d 92 (1977). The Board's rulings in a section 9(b) proceeding, are not considered final orders and are not appealable. *Boire v. Greyhound Corp.*, 376 U.S. 473, 476–78, 84 S.Ct. 894, 896, 11 L.Ed.2d 849 (1964).

For the above reasons, we would overrule *Waterway Terminals* and hold that an order quashing notice of a section 10(k) hearing is not a final order of the Board and therefore not reviewable.