**CHICAGO TYPOGRAPHICAL UNION NO. 16, Plaintiff,**

v.

**DOW JONES & COMPANY, INC., Publisher of the Wall Street Journal in Naperville, Defendant.**

**No. 90 C 7031.**

United States District Court, N.D. Illinois, E.D.

Dec. 28, 1990.

Gilbert A. Cornfield, Cornfield & Feldman, Chicago, Ill., for plaintiff.

Richard K. Muser, Clifton Budd & DeMaria, New York City, Robert S. Minetz, Cowan & Minetz, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

Plaintiff Chicago Typographical Union No. 16 (the "Union") represents 17 employees of defendant Dow Jones & Company, Inc.'s (the "Journal") Naperville, Illinois facility. That facility produces the Midwest Edition of the Wall Street Journal and the Union's members work in the facility's composing room. The employees work under a collective bargaining agreement dated June 19, 1987 (the "Agreement") which expired December 31, 1989, but remains in effect pending negotiations (which have been underway for more than a year) or other action.[1] In November 1990, the Journal informed the Union that it was transferring composing room and other operations for the Midwest Edition to its Dallas plant effective January 31, 1991, which would result in the elimination of about 40 of the Naperville facility's 134 positions, including the positions of all 17 employees represented by the Union. On November 16, 1990, the Union demanded that the notice of termination be rescinded because it was in violation of the Agreement or alternatively demanded arbitration.[2] It was further requested that the two sides jointly agree to an impartial chairman of the Joint Standing Committee by November 29, 1990 so that the grievance could be resolved in advance of the proposed termination date. No agreement was reached and the Journal refuses to select an arbitrator. Presently pending is plaintiff's motion to compel expedited arbitration and for an injunction maintaining the status quo pending arbitration. Plaintiff represents that, if expedited arbitration is ordered, a decision can be issued by January 31.

■ Citing *Chicago Typographical Union No. 16 v. Chicago Sun–Times, Inc.,* 860 F.2d 1420 (7th Cir.1988), defendant argues no dispute exists prior to the date the employees are actually terminated. That case, however, is distinguishable in that it did not involve any actual threat of action by the employer. *See id.* at 1426 ("to prevail in this case, the Union must show that the Sun–Times has acted, *or threatened to act,* in a manner inconsistent with the Union's interpretation of the contract" (emphasis supplied)). Here, a controversy exists because an actual notice of termination has issued. *See Chicago Typographical Union No. 16 v. Chicago Sun–Times, Inc.,* No. 89 C 3615, 1989 WL 76143 (N.D.Ill. June 28, 1989). Defendant also states that no arbitration should be ordered because, in light of further negotiations that it has instituted regarding the terminations, the Agreement under which plaintiff seeks arbitration will not be in existence by the time the terminations actually occur. Regardless of the accuracy of such prediction, the Agreement presently exists and the Union has the right to invoke the grievance procedure pursuant to the Agreement. Defendant does not contest that, given a ripe controversy, the subject of the dispute between the parties is arbitrable.[3] Arbitration will be ordered.

1. Section 1 of the Agreement provides in part:
   Four months prior to the expiration of this contract either party hereto may give the other party notice of desire to change the terms hereof. Negotiations shall be immediately entered into and proceed with all due diligence. If an agreement has not been reached by the date upon which the contract expires, conditions prevailing prior to the expiration of this contract shall be maintained until an agreement is reached or other action is authorized by the [Union] or the Publisher.

2. The Union contends that the transfer is in violation of the contract. Additionally, it contests the right of the Journal to terminate certain "situation holders holding priority prior to June 30, 1960" even after the life of the Agreement. *See* Agreement § 1, ¶ 5.

3. The Agreement provides:
   Section 2. If any controversy, excepting discharge, arises as to interpretation or enforcement of this Agreement the conditions prevailing prior to the dispute shall be main-

■ The next question is whether expedited arbitration should be compelled. Defendant asserts, without any supporting argument or citations, that it has not expressly agreed to expedited arbitration and, therefore, this court has no authority to order it.[4] Plaintiff argues that defendant's delay in making a selection from the available panel of arbitrators and the need for an expeditious decision justifies compelling expedited arbitration.[5] Plaintiff cites no case directly on point and none have been found. Instead, plaintiff cites to the general proposition that, under § 301, courts have the power to "fashion remedies even though lacking in express statutory sanction and that '[t]he range of judicial inventiveness [under section 301] will be determined by the nature of the problem.'" *Rozay's Transfer v. Local Freight Drivers Local 208*, 850 F.2d 1321, 1335 (9th Cir. 1988), *cert. denied*, 490 U.S. 1030, 109 S.Ct. 1768, 104 L.Ed.2d 203 (1989) (quoting *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 457, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957)). *Rozay's* did not involve arbitration, it involved the question of whether tort-like, make-whole remedies could be awarded for contract breaches and the Ninth Circuit determined they could be. In *International Association of Machinists v. Howmet Corp.*, 466 F.2d 1249 (9th Cir. 1972), however, the court indicated that the policy behind labor laws could be taken into consideration in determining the enforceability of arbitration provisions.

The Supreme Court held in the *Steelworkers Trilogy* that the underlying objective of the policy favoring the resolution of disputes by arbitration is that of avoiding industrial strife and promoting industrial harmony through a fair, fast, and flexible system utilizing neutral but knowledgeable "peace-makers." That objective is served by a strong judicial

---

tained until the controversy has been disposed of as provided herein.

Section 3. When it becomes evident there is disagreement as to interpretation or enforcement of the terms of this Agreement, the President, or his authorized representative, of the aggrieved party shall address the President, or his authorized representative, of the other party in writing, clearly setting forth the matters in question. An issue is then raised.

Section 4. The two presidents, or their authorized representatives, and one other member to be appointed by each party, shall meet as a committee within two days from receipt of the letter referred to in Section 3 and shall reach an agreement within five (5) days thereafter. If they shall agree, their majority decision shall be final and binding.

Section 5. If the committee cannot agree on the matter in question within ten (10) days (which may be extended by mutual consent) after a dispute is first considered by it, then at the request of either party hereto, they shall select a fifth disinterested person who shall act as Chairman. Said fifth member may be selected in any manner agreed upon by the Committee, but if after seven (7) days they are unable to agree upon a fifth member, he shall be selected from a panel of five arbitrators submitted by the American Arbitration Association. The committee shall then proceed with all dispatch possible to settle the dispute. The Committee's majority decision shall be final and binding. The parties hereto will share equally the expenses and fees of the fifth member.

Section 6. Any claim of either party for money alleged due or payable under the terms of this Agreement shall be allowed or disallowed only as of the date of the raising of the issue.

Section 7. The controversies or disagreements which may be referred to the Presidents or their authorized representatives, or to the Committee, and decided in accordance with the provisions of Sections 2 through 7, shall be limited specifically to the differences in the interpretation and enforcement of the terms of this Agreement. Provided neither the Presidents, their authorized representatives, nor the Committee may by their decision, provide new or different provisions of the Agreement between the parties.

4. Defendant's entire "argument" is as follows:

   Arbitration is a matter of contract. Neither party can be ordered to arbitrate when it has not agreed to do so. It is undisputed that the Company has *never* agreed to an expedited arbitration proceeding under the existing collective bargaining agreement. There is a significant difference between expedited arbitration and normal arbitration, and it is respectfully submitted that it is beyond the court's power to order the employer to submit to expedited arbitration when it has not agreed to do so.

5. Unlike the parties' collective bargaining agreement, under the American Arbitration Association's expedited procedures, the Association selects a single neutral arbitrator, stenographic recording of the hearing is prohibited, there are to be no posthearing briefs, and any opinion issued is to be summary in form.

policy, initiated by the *Trilogy*, of broadly construing the arbitration clauses of collective bargaining agreements and requiring the disputing parties to arbitrate whenever their agreement is possibly susceptible of an interpretation permitting such action. However, when situations arise, as here, in which the objective of avoiding industrial strife and disharmony would not be served by compelling arbitration, a court has the obligation to examine the potential consequences of compelling arbitration and to tailor its order accordingly.

*Id.* at 1253.

Here, defendant breached the Agreement by refusing to cooperate in the arbitration decision. This breach caused a delay in the arbitration process that prevents the parties from completing the agreed-upon procedures prior to the time the employees will have their jobs terminated. Section 5 of the parties' Agreement states that "[t]he committee shall ... proceed with all dispatch possible to settle the dispute." Section 13 of the Agreement provides that "[t]he language and spirit of this Agreement guarantee the prompt and faithful performance ... of all obligations imposed by the terms ... without waiting for the consideration or adjustment of any differences of opinion respecting the rights of either party" and that a "difference or dispute shall be promptly resolved." These provisions are consistent with, and suggest the appropriateness of, expedited arbitration.

Expedited arbitration will benefit both parties. Uncertainty will be avoided by having a decision in hand by the time of the proposed termination date. While defendant will not have an opportunity to directly select the arbitrator, the arbitrator will still be a neutral party, which is the purpose behind the joint selection process contained in the contract. Since defendant has not presented any adequate argument as to why expedited arbitration should not be compelled, expedited arbitration will be ordered.

Plaintiff also requests an injunction requiring defendant to maintain its current composing room operations in Naperville during the pendency of the arbitration proceeding. Plaintiff must make an adequate showing to justify such an injunction. *See generally Local Lodge No. 1266 v. Panoramic Corp.*, 668 F.2d 276 (7th Cir.1981) (setting forth the factors to consider). However, because expedited arbitration proceedings can be completed prior to the time the employees' positions will be eliminated, there is no need for an injunction pending arbitration.[6] *Cf. Communications Workers of America v. Western Electric Co.*, 430 F.Supp. 969, 979–80 (S.D. N.Y.1977). The request for a status quo injunction pending arbitration will be denied without prejudice.

IT IS THEREFORE ORDERED that the Clerk of the Court is directed to enter judgment in favor of plaintiff and against defendant:

(1) Ordering the parties to forthwith submit the issue raised in plaintiff's November 16, 1990 grievance to arbitration pursuant to the Expedited Labor Arbitration Rules of the American Arbitration Association.

(2) Ordering arbitration proceedings be fully completed prior to January 31, 1991 or any date mutually agreed upon by the parties and the neutral arbitrator.

(3) Denying plaintiff's motion for a preliminary injunction without prejudice.

---

**6.** The need for any additional status quo relief under the contract is, in the first instance, a question for the arbitrator, not the court. *Chicago Typographical Union No. 16 v. Chicago Newspaper Publishers' Association,* 620 F.2d 602, 604 (7th Cir.1980).