**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, LOCAL UNION NO. 245, Plaintiff**

**v.**

**FIRSTENERGY CORPORATION, Defendant**

**No. 3:02CV7550.**

United States District Court, N.D. Ohio, Western Division.

Nov. 27, 2002.

Joseph J. Allotta, Marilyn L. Widman, Michael P. Pazzo, Allotta & Farley, Toledo, OH, for Plaintiff.

Denise M. Hasbrook, Roetzel & Andress, Toledo, OH, for Defendant.

### ORDER

CARR, District Judge.

This is a suit by the plaintiff International Brotherhood of Electrical Workers, AFL–CIO, Local Union No. 245 against an employer, FirstEnergy Corporation. The union seeks to compel expedited arbitration of a grievance relating to changes in the employer's health and welfare plan.

For the reasons that follow, the union's motion for to compel expedited arbitration shall be denied.

The union and employer are parties to a collective bargaining agreement negotiated

in 2001. The Agreement's provisions relating to the employer's health benefits provide, in pertinent part:

Effective January 1, 2002, the Company will have in effect a Flexible Benefits Plan to provide for Health Care, Vision Care, Long–Term Disability, and Flexible Spending Accounts, which are outlined in the FirstEnergy Benefits Handbook. Except as otherwise specified in this Section, participation in the Flexible Benefits Plan will be in accordance with the specific terms and conditions of the applicable plan as stated in said Benefits Handbook, as amended by the Company from time to time. The Company will endeavor to notify the Union prior to amending any of the benefits under the "Flexible Benefits Plan." Employees will have the option annually to enroll or re-enroll into various options subject to certain provisions contained herein. New employees will be able to participate in the Flexible Benefits Plan effective in the first of the month following their date of employment.

The Company is currently reviewing the benefits provided under the Health Care Plan, and the contributions required from employees for coverage. It is understood that there shall be no contributions for Health Care Coverage by employee represented by the IBEW Local 245, prior to January 1, 2004.

The employer's current plan includes a managed Preferred Provider Organization (PPO) and a Health Maintenance Organization (HMO). Neither requires a deductible payment. In September, 2002, FirstEnergy notified its employees that it planned to change its Flexible Benefit Plan effective January 1, 2003.

On October 18, 2002, the union filed a grievance in response to the employer's announcement about the changes to its health plan. The union alleged that the changes violated §§ 26.2 and 26.3 of the agreement, and that the employer had failed to provide proper notification of changes in the plan.

The final step of the grievance procedure is for either party to request arbitration of the dispute. The agreement also prescribes procedures for invoking, responding to the invocation of, and conducting the arbitration process. At the earliest, the parties estimate, implementation of these procedures would result in an arbitration hearing in February, 2003.

In light of the fact that the employer's proposed changes to its health plan become effective on January 1, 2003, the union wants its grievance about those changes arbitrated before that date. Thus, on November 6, 2002, the union demanded that the employer proceed "immediately" to arbitration on the October 18, 2002 grievance. The employer refused this request, and the union filed its complaint and a motion for a temporary restraining order and injunctive relief. By agreement a hearing date before the undersigned was set for November 26, 2002.

At the hearing, the parties submitted exhibits, responded to inquiries from the undersigned about the issues, and argued their positions.

The principal effect of the changes in the employer's health plan will be to require the union's members to be responsible for deductibles (which they do not currently pay), pay increased co-payments, and pay more for prescriptions. In addition, the union expresses concern that its members may be required to change health care providers and will have to retain receipts for all newly imposed payments in order to be able to recoup such payments if the union's grievance is upheld. The union also believes that it will be placed in a disadvantageous light in the eyes of its members if it is unable to

respond effectively to the changes in the employer's plan.

The parties do not dispute the arbitrability of the union's grievance. The dispute between them relates to the timing of the arbitration. The employer stands on the procedures contained in the collective bargaining agreement, while the union wants to have the process expedited in conformance with the rules of the American Arbitration Association (AAA) relating to expedited proceedings. Under those rules, a single arbitrator, rather than a panel, decides the issue, the proceedings are not, unlike many conventional arbitrations, attended by a court reporter and transcribed, and a decision is returned within seven days, typically without benefit of intervening briefing, and usually in summary form.

Though the collective bargaining agreement permits the parties to consent to expedited arbitration, the employer declines to do so because it does not wish to be entirely without choice in the selection of the arbitrator. It desires, as it can in a conventional arbitration, to select one of the three arbitrators, with the third being chosen jointly by the arbitrator chosen by it and the arbitrator chosen by the union.

The union cites a single case, *Chicago Typographical Union No. 16 v. Dow Jones & Co., Inc.,* 755 F.Supp. 209 (N.D.Ill.1990), in support of its demand for expedited arbitration.[1] While the court granted a union's demand for expedited arbitration, the facts of that case differ materially from those in this case. There the company announced that it was transferring work to a different plant, which would have eliminated forty jobs, including all of the jobs

worked by the employees represented by the union. In response to the union's demand for arbitration, the company refused to select an arbitrator.

In granting the union's motion to expedite arbitration, the court in *Dow Jones* pointed out that the company had "breached the Agreement by refusing to cooperate in the arbitration decision." *Id.* at 212. No such breach is alleged here: the time within which the employer is required to select its arbitrator has not yet elapsed, and there is no reason to fear that it will fail to make that selection within the time specified in the collective bargaining agreement.

Moreover, in *Dow Jones,* the "breach caused a delay in the arbitration process that prevents the parties from completing the agreed-upon procedures prior to the time the employees will have their jobs terminated." *Id.* Termination, such as was imminent in *Dow Jones,* has been labeled the "most drastic" step an employer can take. *N.L.R.B. v. Brookwood Furniture, Div. of U.S. Industries,* 701 F.2d 452, 465 n. 40 (5th Cir., 1983). In light of the delays of the arbitration process, expedited resolution of a case involving termination—especially termination of all the jobs in an entire bargaining unit—is highly desirable. Without a prompt resolution, employees are stripped not only of their livelihood, but of most of the benefits of representation. In addition, the union's very existence may be placed at risk. Even if arbitration ultimately has a favorable outcome, the status quo for either the union or its members may, as a practical matter, be beyond restoration.

In *Dow Jones* the court concluded that

---

**1.** Independent research uncovered only one other decision granting a request for expedited arbitration. *International Chemical Workers Union v. Olin Corp.,* 1987 WL 15405 (N.D. Ill., Aug 03, 1987). The court in that case was not, apparently, called on to address ar-

guments the employer is making in this case. In any event, the court granted expedited arbitration in a conclusory manner, and noted that the employer had drafted a proposed order in which it had withdrawn its objections.

Expedited arbitration will benefit both parties. Uncertainty will be avoided by having a decision in hand by the time of the proposed termination date. While defendant will not have an opportunity to directly select the arbitrator, the arbitrator will still be a neutral party, which is the purpose behind the joint selection process contained in the contract.

755 F.Supp. at 212.

The same could, however, be said in almost all instances in which arbitration is occurs: i.e., in almost every case the benefits of arbitration are greatest when delay is avoided. Promptly obtained certainty about the parties' relationship is always preferable to protracted uncertainty. The benefits of prompt resolution, being always manifest, are not a reason for disregarding the agreement negotiated by the parties and imposing expedited arbitration over the objection of one of the parties.

Most importantly, the stakes here, though high, are not absolute. Substantial numbers of union members (of which there are about 540) will incur expenses that heretofore have been borne by the employer under the collective bargaining agreement. The living standard of some of those members will likely be reduced. But their livelihood will not be lost. The ability of the members to choose their doctors may be restricted, or be available only at a price that they have not had to pay in the past. But there is no reason to fear that the overall quality of the health care that they will obtain will not be as it has been.

The union fears that the confidence of its members will be lessened if it is not able to secure prompt resolution of its grievance. But the union's existence, and ability to represent its members vigorously and effectively, is not threatened.

I conclude, therefore, that the harm, not being nearly as substantial as the harm in *Dow Jones,* does not justify expedited arbitration on the basis of that decision.

I also conclude that the harm is not irreparable. Other courts have held that a loss of health care benefits "does not amount to an injury so irreparable that a favorable decision by an arbitrator would be an empty victory for the Union." *Local Union 15, Intern. Broth of Elec. Workers, AFL–CIO v. Exelon Corp.,* 191 F.Supp.2d 987, 993 (N.D.Ill.2001). If the union prevails at the arbitration, it is reasonable to anticipate (the union's arguments to the contrary notwithstanding) that the arbitrators will make the individual members whole. Any loss of standing by the union as a result of its inability to secure immediate relief will likewise be regained if it prevails at the arbitration. Thus, even though a court "may order expedited arbitration, [I] decline to do so in view of [my] determination with respect to irreparable harm." *Independent Oil Workers Union v. Mobil Oil Corp.,* 777 F.Supp. 391, 398 (D.N.J.1991).

I note that courts have consistently rejected demands for expedited arbitration proceedings in other contexts where, as here, the parties' contract makes no reference to expedited arbitration. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cunningham,* 736 F.Supp. 887, 889 (N.D.Ill.1990) ("Although the parties may agree to expedited arbitration as a matter of contract, the governing contractual provisions in this case do not so provide. Under these circumstances, the court cannot order the NYSE to proceed with this case in an expedited manner."); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. McCullen,* 1995 WL 799537, 1995 U.S. Dist. LEXIS 22177 (S.D. Fla., Dec. 13, 1995) ("courts throughout the country overwhelmingly have held that it is improper for parties to be forced to arbitrate in accordance with rules and procedures which differ from those set forth in the parties' written agreement to arbitrate.").

## Conclusion

The parties could have, but did not, bargain for expedited arbitration. I conclude that, even if I could disregard the terms and conditions of their agreement, insufficient justification for doing so has been shown in this case. The employees will be inconvenienced in ways great and small if arbitration is protracted. But a favorable outcome can substantially restore them to their current circumstances. I conclude, accordingly, that the union's motion to compel expedited ambition should been denied.

In light of the foregoing, it is

ORDERED THAT the motion to compel expedited arbitration be, and the same hereby is denied.

A scheduling/status conference is set for December 16, 2002, at 10:30 a.m..

So ordered.